**Mochko v. Mochko**
*[Cite as 6 AOA 246]*

*Case No. 57219*
*Cuyahoga County, (8th)*
*Decided August 30, 1990*

*Lloyd J. Ramsey, 5638 Ridge Road, Parma, Ohio 44129, for Plaintiff-Appellant.*

*Edward L. Joseph, Atrium Office Plaza, 668 Euclid Avenue, #100A, Cleveland, Ohio 44114, For Defendant-Appellee.*

PRYATEL, J.

After thirteen years of marriage, which produced no children, plaintiff appellant Janice D. Mochko, age 47 at the time of trial ("Mrs. Mochko") and defendant appellee Phillip P. Mochko ("Mr. Mochko,), age 45 at the time of trial, were granted a divorce from each other. The record demonstrates that prior to trial, the parties entered into certain stipulations with respect to the division of a majority of the marital assets. The stipulations, which the domestic relations court approved and journalized, gave each party their own household goods, furnishings and automobiles in their possession, except that Mrs. Mochko kept her spoon collection, train set, two fans, beauty shop equipment, three bicycles and camping equipment. The Mochkos agreed to cash in their $25,000 whole life insurance policy with a cash surrender value of $804.00 and split the proceeds evenly. Further, the parties agreed that each would retain their own IRA. The present value of each IRA was $1,125.00.

The court awarded Mr. Mochko the marital residence with a stipulation value of $64,800.00. The mortgage on said property on the date of the *de facto* termination of their marriage was $37,112.66 and the equity was determined to be $28,700.00 from which she is to be paid $5,000. The court awarded Mrs. Mochko one-half of the value of Mr. Mochko's 401(k) savings plan with his employer valued at $1600.00. Also, upon payment to Mr. Mochko of a promissory note, Mrs. Mochko is to receive one-half of the $1,000.00 note made payable to Mr. Mochko for the sale of his one-half interest in a business, Berea Coin & Collectibles, Inc. The court awarded Mr. Mochko the balance of a joint savings

account in the sum of $2,750.00. The parties were also ordered to execute a qualified domestic relations order to Mr. Mochko's employer which would entitle Mrs. Mochko to receive 50% of the pension plan proceeds upon Mr. Mochko's retirement. The sum of the proceeds are to be based upon Mr. Mochko's participation in his employer's pension plan for a period of twelve years from the date of marriage, October 10, 1975 to December 1[1], 1987, the date of the *de facto* termination of the marriage.

The court ordered that no alimony be payable to either party. The court denied Mrs. Mochko's request for attorney fees.

In this timely appeal, Mrs. Mochko advances five assignments of error:

"I. THE RULING OF THE COURT WHICH DENIED SUSTENANCE ALIMONY TO APPELLANT IS UNFAIR, CONTRARY TO LAW, AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AND CONSTITUTES AN ABUSE OF DISCRETION.

"II. THE TRIAL COURT'S FINDING CONCERNING THE SOCIAL SECURITY BENEFITS AND RENTAL INCOME RECEIVED BY APPELLANT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

"III. THE TRIAL COURT ERRED IN ITS DISTRIBUTION OF THE MARITAL ASSETS BETWEEN THE PARTIES IN THAT THE DISTRIBUTION WAS INEQUITABLE AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND REPRESENTED AN ABUSE OF DISCRETION.

"IV. THE TRIAL COURT ABUSED ITS DISCRETION BY NOT GRANTING ATTORNEY FEES TO APPELLANT.

"V. THE TRIAL COURT ERRED BY NOT INSTRUCTING THE PARTIES TO SUBMIT EXPERT OPINION EVIDENCE AS TO THE VALUE OF APPELLEE'S STOCK IN A CLOSE CORPORATION; THE VALUE OF THE SPOON COLLECTION; AND THE VALUE AND COMMENCEMENT DATES OF APPELLEE'S PENSION."

### I. & III.

In the first and third assignments of error, Mrs. Mochko argues that the trial court's disallowance of sustenance alimony and the division of property constitute an abuse of discretion and are against the manifest weight of the evidence. Specifically, she argues that:

(1) the trial court did not properly consider all of the factors listed in R.C. 3105.18(B) in its denial of the sustenance alimony award;[2] and

(2) the trial court did not indicate with sufficient specificity its basis for the denial; thus in contravention of the mandates of *Kaechele v. Kaechele* (1988), 35 Ohio St. 3d 93, syllabus.[3] We agree.

Under Ohio law, alimony is comprised of two parts:

(1) a division of marital assets and liabilities, and

(2) periodic payments for sustenance and support." *Id.* at 95 citing *Cherry v. Cherry* (1981), 66 Ohio St. 2d 348, 352. Once the property is divided, the trial court may consider:

"(1) whether an additional amount is needed for sustenance; and

"(2) the duration of such necessity." *Id.*, citing *Wolfe v. Wolfe* (1976), 46 Ohio St. 2d 399, 414.

In reviewing a domestic relations award, the reviewing court should determine whether the award is fair, equitable and in accordance with the law, being mindful, however, that it should not substitute its judgment for that of the trier of fact. *Kaechele, supra,* at 94.

The parties stipulated to a majority of the marital assets. Of the assets not stipulated to, Mrs. Mochko was awarded $20,870, which sum allegedly reflects the amount she withdrew just after the *de facto* termination, $13,370, plus the $7,500 worth of loans made to her relatives.

In June 1986, Mrs. Mochko's mother died and left her a certificate of deposit worth $16,799.55. After $1,000.00 of estate taxes were paid, the balance was deposited in their joint savings account. However, the inheritance remained Mrs. Mochko's property.

One month after the *de facto* termination of their marriage, Mrs. Mochko withdrew $12,870.00 from the joint savings account. From her inheritance, after taxes, Mrs. Mochko subtracted $1,700.00, which sum reflected the price of a video recorder which the parties purchased during marriage, which she took with her. Mrs. Mochko also subtracted loans she made to her two adult children and an aunt, which totalled $7,500.00. This left $6,599.55 remaining of her inheritance. To this amount, she added interest of $1,378.36 which had accrued on the account since the date her inheritance was deposited. Mrs. Mochko then calculated the amounts that

had been deposited in the joint account from the children's certificates of deposit, which totalled $4,891.95. The balance of her inheritance plus interest and the money from her children's certificates of deposit were withdrawn by Mrs. Mochko.

By awarding her to keep $20,870, the court gave her as a marital account what admittedly was non marital and already belonged to her and her children ($12,870).

To illustrate

$16,799.55 -
- 2,700.00=    bequest from deceased mother $1,000 probate fees and 1,700 video recorder purchased by parties and retained by appellant
-----
$14,099.55
- 7,500.00 -    payment to joint account for loans to kin (two children and aunt)
-----
$6,599.55
+1,378.36-    interest earned on bequest of mother
-----
$ 7,977.91
+ 4,891.55 -    returned to children whose certificate of deposits were cashed and placed in joint account.
-----
$12,869.46 -    Mrs. Mochko's withdrawal (12,870) from joint account.

To this sum ($12,870) the court added $7,500 which she already paid by deducting it from what she was entitled in the bequest. She could hardly keep what she already returned. Nevertheless, the court adopted "lock, stock and barrel" the journal entry exactly as drawn by appellee's counsel.

Based on our analysis, we believe that the division of assets, in reality, reduced itself to the following:

| Awarded H Philip P. Mochko | Assets | Awarded W Janice D. Mochko |
|---|---|---|
| $23,700 | Equity Residence | $5,000 (available upon sale) |
| 402 | Life Ins. (each his own) | 402 |
| 1,125 | IRA | 1,125 |
| 800 | 401K(H) Savings Plan | 800 |
| 500 | Coin Collection | 500 (when note is paid) |
| -0- | Spoon Collection | 5,000 |
| 2,750 | Joint Savings Acc't. | -0- |
| $29,277 | | $12,827 |
| 50% upon his retirement based on 13-year marriage (employed 23 yrs) | Pension (H) (value unknown) | 50% upon his retirement based on 13-yr. marriage (no pension of her Own) |
| 15.26 per hour (40 hours per week) | Earning Ability | (when work avail.) 4.00 per hour 25-35 hrs. per week |
| Yes | Hospitalization | ? |
| 45 | Age | 47 |
| $2,214 (not awarded) | Attorney Fees | $2,360 (not awarded) |
| Undistributed | (H) Stip. #3 11 Shares Alcoa @ $39 | Undistributed |

Our review of the value of the marital assets and the court's distribution of those assets lead us to conclude that the division of marital property and the denial of sustenance alimony was not in compliance with the mandates of *Kaechele, supra*, and was an abuse of discretion.

In 1980, approximately five years after the parties were married, the father of Mrs. Mochko's three children died and she began to receive social security benefits for the children. The record indicates that she was receiving approximately $1,000 to $1,300 per month through 1988. Mrs. Mochko further testified and the court found that she received rent from her minor children for a period of three years which was spent for the children's education, clothing and personal needs.

The evidence adduced below reveals that Mrs. Mochko, while in high school, studied cosmetology. She does not have additional schooling beyond that. The record is silent with respect to Mr. Mochko's educational background but at the time of trial, he was a trimmer dye sinker at Alcoa earning $15.26 per hour while Mrs. Mochko was employed as a cosmetologist earning $4.00[4] per hour plus minimal tips working between 25 and

35 hours per week, with a monthly net income of approximately $315.00. Mrs. Mochko further testified to approximately $690.00 in monthly expenses, which included rent, hospitalization, utilities, car expenses and personal needs.

Mr. Mochko was awarded the marital residence with an equity value of $28,700.00 which will more than likely appreciate. Mrs. Mochko was awarded the sum of $5,000.00 as her interest in the marital residence (when sold) where he plans to continue to reside. Nor did the court order provide for any sustenance alimony, notwithstanding that counsel for defendant in closing argument conceded that "the woman needs some rehabilitative alimony..." On these facts, we believe the denial of sustenance alimony constitutes an abuse of the court's discretion.

The trial court did not consider all the factors contained in R.C. 3105.18(B) and did not state with sufficient specificity its reasons for its decision.

Accordingly, we sustain the first and third assigned errors and remand to the trial court for a further hearing on all aspects of alimony.

## II.

In the second assigned error, Mrs. Mochko argues that the trial court found that "neither the social security benefits nor the rental income were deposited in either the joint checking account or the joint savings account ..."

In direct exam of Mrs. Mochko (p. 15, 1. 12), we find the following:

"Q. And what was done with the money (soc. security) as it came into your hands?

"A. It went for the support of the children for their clothing, their personal needs, their education, school supplies, whatever they needed and the balance was deposited in the joint savings acct.

"Q. Did there come a time when some of the money that was coming in as social security benefits were deposited as certificates of deposit for the children?

"A. Yes.

"Q. When did this happen?

"A. Shortly after the social security checks began coming my husband and I discussed the possibility of setting aside a certain amount of money for the children later on like a trust fund. And at the time certificates of deposit were paying I think 12% interest or something in that area. It was very high. So each monthly check we took a certain portion of money per child and opened a certificate of deposit for them ...

"Q. Those C.D.'s were then closed in 1983?

"A. Yes, as they matured in 3 years.

"Q. *** What was done with the money?

"A. *** I closed the certificate and deposited money into the joint savings account.

"Q. When you deposited the money *** for your children into the joint account, did you have any understanding with your husband?

"A. Yes. I did.

"Q. What was that understanding?

"A. It was understood that the, monies were designated for the children when they either left home or were of age that the trust we had established for them from the social security funds and that it would eventually be distributed to them
    "***."

Upon cross-examination of Phillip Mochko (p. 168):

"Q. Did you know about the certificate of deposit that your wife opened up for each of the children?

"A. Yes.

"Q. And did you know that she put the money then into the joint account when these C.D.'s matured?

"A. Yes.
"***

"Q. In other words, she set aside the money for the children?

"A. That was the intent at that time.

"Q. Yes, then it was put in a joint account, and the idea was that when the time came, they would be getting the money that was saved for them?

"A. At the time we opened them, that was the intent."

Accordingly, we sustain Assignment of Error #2.

## IV.

In Mrs. Mochko's fourth assigned error, she argues that the trial court erred in denying her request for attorney fees.

The authority to award attorney fees in a divorce proceeding is vested within the sound discretion of the court. *Swanson v. Swanson* (1976), 48 Ohio App. 2d 85; *Cohen v. Cohen* (1983), 8 Ohio App. 3d 109. To constitute an abuse of discretion, the trial court's judgment must be unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St. 3d 217, 218.

She contends that because Mr. Mochko had superior income, the ability to pay and was awarded the greater amount of the marital assets, the trial court abused its discretion in

denying her request, requiring her to bring the matter before this court. We agree.

Accordingly, the fourth assignment of error is sustained.

## V.

In her fifth and final assigned error, Mrs. Mochko argues that the trial court erred in not instructing the parties to submit expert opinion evidence as to:

(1) the value of Mr. Mochko's stock in Berea Coin and Collectibles, Inc.;

(2) the value of the spoon collection; and

(3) the value and commencement dates of Mr. Mochko's pension. As such, Mrs. Mochko argues that because the trial court improperly evaluated Mr. Mochko's business and the spoon collection, and placed no monetary value on pension benefits, she was denied an equitable division of property and sustenance alimony. Where the evidence reveals assets that represent a significant portion of the assets, their value (coin business and spoon collection) should be submitted for valuation to a knowledgeable person who is a stranger to the proceedings.

Furthermore, the trial court erred by not placing a value on Mr. Mochko's pension benefits based on probable eligible dates of commencement for such benefits. Mrs. Mochko was forty-seven at the time of trial, while Mr. Mochko was forty-five. He has quite a few years before his pension vests, which in turn, leaves Mrs. Mochko on her own for some fifteen or twenty years. As there is a lack of any evidence establishing the value placed on these pension benefits, we are hampered in our efforts to review the propriety of the court's division of that property. See, *Willis v. Willis*, (1984), 19 Ohio App. 3d 45, 48.

Assignment of error #5 is sustained.

Finally, in reviewing the evidence, we find no disposition of 11 shares of Alcoa stock @$39. See Stipulation #3.

Judgment reversed and remanded with proceedings not inconsistent with this opinion.

This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.

KRUPANSKY. P.J., and FORD, J., concur.

Sitting by assignment: August Pryatel, Retired Judge of the Eighth District Court of Appeals; Robert B. Ford, Retired Judge of Geauga County Court of Common Pleas.

[1] Stipulation No. 12 provides that they stopped living together on December 27, 1987 when he created a scene at 7:00 a.m. and, in the presence of police, she was told by defendant to leave with her children. (The date affects the value of her share of his pension.)

[2] R.C. Section 3105.18 Alimony.

"(A) In a divorce, dissolution of marriage, or alimony proceedings, the court of common pleas may allow alimony as it deems reasonable to either party. The alimony may be allowed in real or personal property, or both, or by decreeing a sum of money, payable either in gross or by installments, as the court deems equitable.

"(B) In determining whether alimony is necessary, and in determining the nature, amount, and manner of payment of alimony, the court shall consider all relevant factors, including:

"(1) The relative earning abilities of the parties;

"(2) The ages, and the physical and emotional conditions of the parties;

"(3) The retirement benefits of the parties;

"(4) The expectancies and inheritances of the parties;

"(5) The duration of the marriage;

"(6) The extent to which it would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home;

"(7) The standard of living of the parties established during the marriage;

"(8) The relative extent of education of the parties;

"(9) The relative assets and liabilities of the parties;

"(10) The property brought to the marriage by either party;

"(11) The contribution of the spouse as homemaker."

[3] First, the trial court must consider *all* of the factors listed in R.C. 3105.18(H) in making an award for sustenance alimony. Kaechele, supra, at paragraph one of the syllabus. Second, the trial court must indicate the basis for its allocation of property and sustenance alimony award in sufficient detail to enable a reviewing court to determine if the award is fair, equitable and in accordance with law. *Kaechele, supra,* at paragraph two of the syllabus.

[4] Minimum wage is currently $3.80 per hour.