SPYCHALSKI, Appellant,

v.

SPYCHALSKI, Appellee.

[Cite as *Spychalski v. Spychalski* (1992), 80 Ohio App.3d 10.]

Court of Appeals of Ohio,
Lucas County.

No. L–91–122.

Decided May 8, 1992.

*Martin J. Holmes*, for appellant.

*Peter L. Moran*, for appellee.

**12**

*Per Curiam.*

Plaintiff-appellant, Carol A. Spychalski, appeals from a judgment of divorce granted by the Lucas County Court of Common Pleas, Domestic Relations Division, which terminated her marriage to defendant-appellee, Robert J. Spychalski.

The parties were married on August 13, 1966. At that time, both appellant and appellee were employed at Owens–Corning Fiberglas. After the birth of the parties' two children, Bryan and Carol, appellant ceased working at Owens–Corning Fiberglas and became a homemaker and the primary caregiver for the children. She returned to work, part-time, in 1975 and became a full-time receptionist for a dentist in, approximately, 1982. At the time of the divorce, she had recently changed her employment and was earning a salary of $16,000. This was the highest salary ever achieved by appellant; her employer provided health benefits after ninety days but did not have a pension plan.

For the first two years of their marriage, appellant and appellee resided, rent free, with appellant's parents. In April 1968, they purchased their own residence at a cost of $20,000. The purchase was financed with a $7,000 down payment and $13,000 borrowed from appellant's grandmother. Subsequently, appellant's grandmother became ill, and the house was refinanced through Ohio Citizens Bank. At the time the parties separated, the amount owed on the mortgage was $10,662.18. At the time of trial, the marital residence had an appraised value of $60,000. Approximately $2,000 remained owing on the mortgage principal. Appellant paid the mortgage and real estate taxes from the time of the separation to the date of the divorce.

In March 1984, appellee filed a complaint for divorce. The parties permanently separated in June 1984. By mutual agreement, appellee voluntarily paid appellant $400 per month in support. After his daughter left home in 1987, he provided appellant with $200 per month in support. Appellee also assumed responsibility for any marital debts incurred prior to the separation. Including this amount, approximately $7,000, appellee expended an estimated $26,000 for the support of his family for the six-year period from July 1984 through July 1990.

In January 1985, Bryan was killed in an automobile accident. As a consequence of Bryan's death, appellee dismissed his complaint for divorce and, although the parties remained separated, they engaged an attorney to pursue a wrongful death claim. In July 1987, the claim was settled. By agreement of appellant and appellee, each received $97,000 from the settlement. The remainder went into a trust fund for their daughter's education.

In November 1986, Owens–Corning Fiberglas was reorganized and appellee, who had worked there for nineteen years, was terminated. He received a lump sum distribution, which included his pension, of over $63,000. Appellee failed to timely roll over certain deferred monies received as part of the distribution, thereby creating a tax liability on these funds which remained due and owing at the time of trial. Appellee was unemployed for the next six months. Nonetheless, he then obtained employment and stayed employed for the next three and one-half years. At the time of trial, appellee was earning $41,000 per year, had employer-provided health benefits and after one year of employment could participate in the company pension plan. It is undisputed that appellee spent large sums of the money received from the lump sum distribution and/or the settlement for the period commencing in December 1986 and ending in August 1990. He could not or would not provide an accounting as to how or when some of these funds were expended. On the other hand, appellant had over $89,000 in bank accounts at the time of trial. A vast majority of these accounts consisted of funds received as part of the $97,000 settlement.

Based on the foregoing facts, the trial court entered a decree of divorce on March 26, 1991. In that judgment, the court set the valuation date for the marital assets as of the date of trial, August 24, 1990. The trial court judge included monies received as a result of the settlement of the wrongful death suit as marital assets. Nevertheless, she refused to find that appellee had dissipated any of these funds or those monies received as a part of the lump sum distribution. Rather, the court below determined that appellee had expended his half of the settlement "in his own support and that of his daughter and his wife." The court further found that this support had permitted appellant to leave her settlement funds "almost intact." The court then adopted appellee's proposed division of the marital assets and awarded him $28,035.50 as his equity in the marital residence. Appellant's request for sustenance alimony in the amount of $200 per month for a period of five years was denied.

Appellant timely appeals this judgment and sets forth the following assignments of error:

"I. The trial court abused its discretion in the division of property by awarding property to the appellee which was clearly against the manifest weight of the evidence and applicable law.

"II. The trial court abused its discretion by failing to consider all of the relevant evidence in regard to application of statutory factors in it's [sic] determination not to award sustenance alimony.

"III. The trial court abused its discretion in failing to consider or even rule on the appellant/plaintiff's post-hearing motion regarding loss of employment."

Because the resolution of appellant's third assignment of error has the potential to affect our disposition of appellant's other assigned errors, that assignment shall be considered first. Appellant maintains that the trial court abused its discretion by failing to rule upon her motion to "reopen" this cause in order to take evidence as to appellant's. loss of employment. She further argues that the trial court abused its discretion by, in essence, granting appellee's motion to "reopen" this case based on appellant's alleged post-trial $20,000 in lottery winnings.

Trial of this case was held on August 24, 1990. Although no such motion is found in the record of this case or noted on the docket sheet, appellee apparently, in September 1990, filed a motion to "reopen" the case in order to take evidence as to the alleged $20,000 in lottery winnings. On January 3, 1991, appellant filed her motion to "reopen" in order to submit evidence of the fact that she was on "notice" of the termination of her job. The record of this case contains no journalization of a ruling on either of these motions. Nevertheless, in its judgment of March 26, 1991, the trial court lists the $20,000 as one of appellant's assets and considers the lottery winnings in its determination of appellant's request for sustenance alimony.

 This court has previously decided that a motion for a new trial which is filed after trial but before final judgment and which is based upon newly discovered evidence can be employed to seek the introduction of such evidence in a divorce case. *Marksbury v. Marksbury* (1988), 46 Ohio App.3d 17, 545 N.E.2d 651. Thus, the parties' motions to "reopen" could be considered as motions for a new trial. Nonetheless, the record of this case is devoid of any ruling on these motions. More importantly, the record contains no indication that evidence as to either the alleged lottery winnings or a possible loss of employment was submitted. While appellant's memorandum in opposition to appellee's motion to reopen mentions that appellant did win approximately $20,000 in lottery winnings, this is not admissible evidence of such winnings. If, therefore, a domestic relations court determines that it will, only in extraordinary instances, consider a post-trial change of circumstances as to either one or both of the parties, it should insist that evidence of that change be submitted so that it is properly part of the record on appeal. This was not done in the instant case. We, therefore, conclude that the trial court erred by including the $20,000 in its determination of a division of the marital property and sustenance alimony. Appellant's third assignment of error is found well taken.

In her first assignment of error, appellant asserts that the trial court abused its discretion in its division of the marital property. A domestic relations court is required, after granting a divorce, to equitably divide and distribute the marital property. *Wolfe v. Wolfe* (1976), 46 Ohio St.2d 399, 75 O.O.2d 474, 350 N.E.2d 413. In this context, the term "equitable" does not mean "equal"; a court begins its analysis with a potentially equal division of the marital property and adjusts that division after a consideration of the relevant factors found in R.C. 3105.18(B).[1] *Kaechele v. Kaechele* (1988), 35 Ohio St.3d 93, 95, 518 N.E.2d 1197, 1200. The trial court is afforded broad discretion in determining the proper scope of the property division. *Holcomb v. Holcomb* (1989), 44 Ohio St.3d 128, 131, 541 N.E.2d 597, 599. Nevertheless, in fashioning the division of the marital assets, the domestic relations court has an obligation to determine what property is marital and what property is nonmarital, *Buckles v. Buckles* (1988), 46 Ohio App.3d 102, 112, 546 N.E.2d 950, 960, and to assign a value to that property which is found to be a marital asset, *Buckles, supra*, at 109, 546 N.E.2d at 957. The choice of a valuation date for marital assets rests upon equitable considerations and is generally a matter within the discretion of the domestic relations court. *Berish v. Berish* (1982), 69 Ohio St.2d 318, 23 O.O.3d 296, 432 N.E.2d 183. It is our duty to review the award of the domestic relations court in order to determine whether the division of marital property is fair, equitable and in accordance with the law. Unless, however, the lower court's decision amounts to an abuse of discretion, this court cannot substitute its judgment for that of the trial court. *Kaechele, supra*, 35 Ohio St.3d at 94, 518 N.E.2d at 1199. An abuse of discretion connotes more than an error of law or of judgment; it implies that the trial court's attitude in reaching its decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142.

---

1. R.C. 3105.18(B) provides:

"In determining whether alimony is necessary, and in determining the nature, amount, and manner of payment of alimony, the court shall consider all relevant factors, including, but not limited to, the following:

"(1) The relative earning abilities of the parties;

"(2) The ages, and the physical and emotional conditions of the parties;

"(3) The retirement benefits of the parties;

"(4) The expectancies and inheritances of the parties;

"(5) The duration of the marriage;

"(6) The extent to which it would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home;

"(7) The standard of living of the parties established during the marriage;

"(8) The relative extent of education of the parties;

"(9) The relative assets and liabilities of the parties;

"(10) The property brought to the marriage by either party;

"(11) The contribution of a spouse as homemaker."

In the case before us, the lower court included the following as marital assets:

| APPELLANT | | | APPELLEE | | |
|---|---|---|---|---|---|
| Marital Residence | $ 56,207.00 | | Marital Residence | –0– | |
| First Federal | 18,039.00 | (settlement funds) | First Federal CD | $ 34,000.00 | (settlement funds) |
| First Federal CD | 49,536.00 | (settlement funds) | Trustcorp CD | 10,000.00 | (settlement funds) |
| United Home Fed. | 6,144.00 | (settlement funds) | Trustcorp checking | 4,000.00[2] | (settlement funds) |
| United Home Fed. CD | 10,680.00 | (settlement funds) | Ohio Citizens | 125.00 | |
| Society checking | 455.00 | (settlement funds) | Retirement acct. from severance | | |
| Ohio Citizens | 170.00 | | package | 22,000.00 | |
| | $141,231.00 | | | $ 70,125.00 | |

### NONMARITAL ASSETS

| | | | | |
|---|---|---|---|---|
| Lottery winnings | 20,260.00 | | –0– | |
| Inheritance | 4,827.00 | (IRA) | –0– | |
| Premarital house | 1,800.00 | | –0– | |

---

█ In this analysis, the domestic relations court found, by implication, that the $97,000 received by each of the parties as a result of the settlement of the wrongful death suit was a marital asset. The parties do not dispute this finding on appeal. It is also clear that the lump-sum distribution from Owens–Corning Fiberglas was a marital asset. Nevertheless, by its choice of a valuation date, the court then penalized appellant for her investment of the majority of her $97,000 and refused to acknowledge the fact that appellee could not account for expenditures of marital assets from November 1986 to August 1990. In addition, the court's distribution of the assets is incorrect. Based upon our analysis, the marital assets, as testified to by the parties at time of trial, were as follows:

| APPELLANT | | | APPELLEE | | |
|---|---|---|---|---|---|
| Marital Residence | $ 28,103.50 | | Marital Residence | $28,103.50 | |
| First Federal | 18,761.39 | (settlement funds) | Trustcorp CD | 34,000.00 | (settlement funds) |
| First Federal CD | 49,536.00 | (settlement funds) | Trustcorp checking/savings | 10,000.00 | (settlement funds) |
| United Home Fed. | 6,144.60 | (settlement funds) | Ohio Citizens | 125.00 | |
| United Home Fed. CD | 10,130.82 | (settlement funds) | Retirement fund | 22,000.00 | (OCF Distribution) |
| Society checking | 455.00 | (settlement funds) | Jeep | ? | |
| Ohio Citizens | 170.00 | | Fiero | ? | |

---

2. This item is duplicative. Appellee testified that the $10,000 was withdrawn. $4,000 was put in a checking account, $2,000 in a savings account. No explanation was provided as to the disposition of the other $4,000.

| APPELLANT | | APPELLEE | | |
|---|---|---|---|---|
| Insurance policy surrender value | $1,063.19 | Insurance policy | $ ? | (face value $50,000) |
| Pension distribution | 3,643.00 | Ohio Citizens credit union | 1,406.74 | |
| Cemetery lots | 622.50 | Cemetery lots | 622.50 | |
| | $118,630.00 | | $96,257.74 | |

**NONMARITAL ASSETS**

| | | | | |
|---|---|---|---|---|
| Gift from grandmother | 4,827.00 (IRA) | | –0– | |

---

An equal split of these funds amounts to $107,443.87 and does not take the value of the Jeep, Fiero or cash value of appellee's life insurance policy into account. Values for the Jeep, Fiero and the life insurance policy should have been determined. See *Buckles, supra.* See, also, *Mochko v. Mochko* (1990), 63 Ohio App.3d 671, 680, 579 N.E.2d 773, 779. The court should have then considered all of the relevant factors, including appellee's dissipation of the marital funds for the period from November 1986 to August 1990. That is, the factors to be considered are not limited to those found in R.C. 3105.18(B). Dissipation of marital assets has been deemed a relevant factor by this court as well as other courts. See *Sears v. Sears* (Mar. 24, 1992), Guernsey App. No. 91–CA–23, unreported, 1992 WL 71550; *Hirschberger v. Hirschberger* (Apr. 27, 1990), Lucas App. No. L–89–018, unreported, 1990 WL 52886; *Wilder v. Wilder* (Apr. 25, 1989), Franklin App. No. 88AP–685, unreported, 1989 WL 43293; *Clemons v. Clemons* (Dec. 31, 1987), Butler App. No. CA87–06–082, unreported, 1987 WL 32753; *Young v. Young* (Dec. 30, 1986), Franklin App. No. 86AP–585, unreported, 1986 WL 15173. In this case, the domestic relations court chose the valuation date as the time of trial. In doing so, absent a consideration of dissipated monies, an inequitable distribution is achieved. In *Berish, supra,* the Supreme Court of Ohio recognized the date of a *de facto* termination of a marriage as a valid date for the valuation and distribution of marital assets. The *Berish* court reached its holding because it was fully aware of the inherent danger in opting for date of trial as the valuation date in a case where the parties have lived separate and apart for an extended period of time. The court's reasoning is found at 69 Ohio St.2d at 320–321, 23 O.O.3d at 298, 432 N.E.2d at 185 of *Berish, supra,* and reads:

"Equity may occasionally require valuation as of the date of the *de facto* termination of the marriage. The circumstances of a particular case may make a date prior to trial more equitable for the recognition, determination and valuation of relative equities in marital assets.

"Indeed, inequity would likely result if this court were to blindly equate the termination of a marriage to the dissolution of a business partnership, and accept the position that if marital assets can disappear before the entry of the

final divorce decree, the trial court loses all jurisdiction to divide and determine the equities therein since said assets and liabilities must be in existence at the moment of distribution. If a trial court was rendered powerless to recognize and determine property rights in assets that do not exist at the time of the final decree, one party, from the time of separation to the time of the final decree, could withdraw all funds and, unilaterally and with impunity, squander the fruits of the marital labor. Such a position would not only be antithetical to public policy, but also to prior case law."

Thus, in a case such as this one, where funds have been unilaterally dissipated by one of the parties during a separation period, equity demands that the trial court consider that dissipation as a factor in determining an equitable distribution of the marital property.[3]

In November 1986 and July 1987, appellee received approximately $160,000 in marital funds. He testified that some of these monies were used for his support during his six months of unemployment. Assuming, *arguendo*, that appellee's listed monthly living expenses of over $4,000 per month is a credible estimate, that would account for only $24,000 of the $160,000 total. Even the trial court, however, expressed serious doubts as to the trustworthiness of appellee's listed monthly expenses. In contrast, appellant's listed monthly expenses total $1,420. Furthermore, appellee's gross income, from wages only and as set forth in his federal income tax returns, was approximately $26,000 for 1987, $38,000 for 1988, and $35,000 for 1989. As of July 31, 1990, appellee had earned over $24,000 and expected a gross wage of $41,000 for the year. During this same period, and assuming appellee made monthly payments through July 1990, the voluntary support payments to appellee's wife and daughter can be calculated by adding the amount for each year— $4,800 in 1987, $2,400 in 1988, $2,400 in 1989 and approximately $1,400 in 1990. This totals $11,400 in voluntary support over a three and one-half year period. Considering the fact that appellee claimed to have spent a six-year total of $26,000 in voluntary support, inclusive of $7,000 in preseparation marital debt, this calculation is favorable to appellee. Appellee testified with regard to two other items purchased with money obtained as a result of the settlement. These were a 1987 Jeep which was paid for but was not valued and a 1988 Pontiac Fiero, also unvalued, but with over $6,000 still owed on the

---

3. Because we are of the opinion that the circumstances in this case are comparable to those considered in *Berish, supra,* this court questions the trial court's choice of a valuation date. Nevertheless, the parties do not assign this choice as error on appeal. Moreover, if the court below considers the dissipation of marital funds by appellee and the other relevant factors, the end result will be equitable. For this reason only, the trial court did not abuse its discretion in its selection of a valuation date.

purchase price. In sum, appellee accounted for the following expenditure of marital funds:

| | |
|---|---|
| $ 34,000 | Trustcorp |
| 10,000 | Trustcorp checking |
| 24,000 | his support |
| 11,400 | support of wife/daughter |
| 4,000 | prorated $7,000 marital debt |
| 22,000 | retirement benefit |
| $105,400 | |

This leaves $54,600 in marital funds dissipated during a period when the parties were still married and is exactly the kind of occurrence which the *Berish* court sought to prevent.

Moreover, the court below failed to take all other relevant factors into consideration. Appellee, at forty-six years of age, and appellant, at forty-three years of age, are relatively young; both have roughly the same degree of education and gained their work skills through experience. Although appellee appears to be in somewhat better health, any physical problems experienced by appellee have not affected his employment; no evidence was offered to establish that his employment would be affected in the future. Appellee's current earning ability is over two times as great as appellant's. At the time of trial, appellee had the opportunity for reaping greater retirement benefits through his employer's pension plan; appellant did not. This was a marriage of long duration, twenty-four years. During that marriage appellant was the primary caregiver for the children and the person who, with the help of her family, maintained the marital residence. The trial court placed too much emphasis upon the fact that appellant had greater assets and fewer liabilities than appellee and, while focusing upon this factor, arbitrarily refused to acknowledge appellee's dissipation of the marital funds. Appellee's liabilities for federal income tax was the result of his own conduct, *i.e.*, failure to timely roll over tax-deferred income. This act also adversely affected the marital assets as well. Further, the lower court declined to recognize the fact that appellant had a like liability in the amount of $14,500 owed on a loan from her mother. While appellant had the expectancy of inheriting property from her mother, this factor was also given too much weight when balanced against appellee's much greater earning ability, the minimal support he provided to his family, his prospects for a pension and his dissipation of marital funds. See, *e.g.*, *Holcomb, supra*, 44 Ohio St.3d at 133, 541 N.E.2d at 601 (cautioning against giving too much weight to the possibility of inheritance). Finally, appellee was not entitled to credit for any gifts which he voluntarily provided to his adult daughter. We conclude that the trial court's attitude was arbitrary, unreasonable and unconscionable in that it failed to consider certain

relevant factors and overemphasized others. The distribution of the marital property achieved through this abuse of discretion was, therefore, inequitable and not in accordance with the law. Appellant's first assignment of error is found well taken. Although this court is of the opinion that an equitable division of the marital assets in this case would, at a minimum, include an award of clear title to the marital residence to appellant, we will not substitute our judgment for that of the trial court. Instead, this case will be remanded with instructions to determine an *equitable* distribution of the marital assets which is in accordance with this decision.

Appellant's second assignment of error addresses the issue of sustenance alimony. Appellant maintains that the trial court abused its discretion in denying her request for sustenance alimony in the amount of $200 for a period of five years. Again, the determination of the need for an amount of sustenance alimony is a matter within the discretion of the domestic relations court. *Kunkle v. Kunkle* (1990), 51 Ohio St.3d 64, 67, 554 N.E.2d 83, 86. The relevant factors in R.C. 3105.18(B) also serve as guidelines in making this determination. *Id.* In reviewing the denial of a request for sustenance alimony, the appellate court must look at the totality of the circumstances and ascertain whether the trial court acted arbitrarily, unreasonably or unconscionably. *Id.* The primary consideration in whether an award of sustenance alimony is warranted is necessity. *Id.* at 68, 554 N.E.2d at 87.

██ Even in the light of the current division of the marital assets, appellant has the resources and ability to be self-supporting. Therefore, the trial court did not abuse its discretion in denying appellant's request for sustenance alimony. Nevertheless, due to the unlikely possibility that the proceedings on remand might result in a distribution of the marital assets which would affect this assessment of the lower court's ruling, we find the issue of sustenance alimony is not yet ripe for review and will not consider the merits of appellant's arguments at this time. Appellant's second assignment of error is found technically not well taken.

On consideration whereof, this court finds that substantial justice was not done the party complaining. The judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is reversed. This cause is remanded to that court for further proceedings not inconsistent with this judgment and for a decision based on the evidence before that court.

*Judgment reversed*
*and cause remanded.*

HANDWORK, P.J., MELVIN L. RESNICK and SHERCK, JJ., concur.