DECISION AND JUDGMENT ENTRY
This appeal comes to us from a judgment issued by the Lucas County Court of Common Pleas, Domestic Relations Division, in a divorce action. Because we conclude that the trial court erred in computing appellant's income, in dividing marital property, and in other factual findings, we reverse in part.
Appellant, John R. Jump and appellee, Mary Ann Jump were married in December 1968. In March 1996, appellee filed for divorce; the parties' three children were emancipated. The parties stipulated as to the financial schedules filed with the court and the market value of the parties' two vehicles. The parties' house, determined to be marital property, was sold for $115,000 during the pendency of the divorce proceedings, netting $76,306.61. A hearing was conducted to determine property division issues, debt payment, spousal support, and the alleged dissipation of marital assets.
The final hearings were conducted in May 1997 with both post-trial briefs filed by June 11, 1997. The record shows that the divorce was acrimonious with many disputes over the marital household property. Testimony and evidence were presented that appellant threatened appellee, stopped making payments on the home equity line, compensated the woman with whom he now lived (formerly the travel agent for the parties' vacations) for portions of her rent, hid marital property, and sold $185 worth of garage sale items without appellee's permission. On the other hand, evidence was submitted that appellee withdrew $5,000 from the home equity line just prior to filing for divorce, took certain items from the home that appellant was to be awarded, ran up charges on the parties' credit card just prior to and immediately after filing for divorce (in amounts exceeding several thousand dollars for clothing, elective cosmetic surgery, groceries, and other household items), and also hid marital personal property.
On August 27, 1999, the trial court issued its final decision. The proceeds from the marital home were divided equally between the parties. The court found that a $25,000 payment made by appellant's mother, which was used to pay off the parties' mortgage and other debts, was a gift and not a loan. The court found that appellant had pensions from his employment with Bell Telephone for twenty-nine years and the Army National Guard for approximately thirty years. Appellee was awarded, by means of a Qualified Domestic Relations Order ("QDRO"), one-half of appellant's pensions at such time as he begins to collect them.
In considering spousal support, the court found appellant to be a"fifty-six year-old man" in good health who, by agreement of the parties, was the primary source of the couple's income throughout the marriage. Appellant has a college degree, additional experience and college credit in electrical engineering, experience as an aviation pilot, and a realtor's license. The court found appellant's current income as a sales representative for Miesel Food Service Company to be $39,000, with the potential to earn more.
The court found that appellee, a fifty-one year old woman in good health, has minimal job experience or skills. Appellee has a high school diploma. She was the primary caretaker for the couple's three children during the marriage and worked only sporadically. Appellee was recently employed in various retail store positions, earning $5.50 per hour with a maximum of $13,000 in her highest income year. Due to the parties' established standard of living, appellant was ordered to pay appellee spousal support in the amount of $1,200 per month for nine years, reviewable upon appellant's retirement, either parties' death, or appellee's remarriage or cohabitation.
The court divided the assets and debts as follows:
Wife Husband
Marital Residence (from escrow) $50,372 $25,934
1989 GMAC Jimmy (vehicle) 5,245
1989 Honda Accord (vehicle) 5,260
Fifth Third Checking Acct. 342
Metropolitan Life Ins. Policy 2,500
Merrill Lynch IRA 111,661 111,661
Army National Guard Pension X X
Motorcycle 200
Household items and furnishings 1,235 23,775
Home Equity Withdrawals 5,000 2,900
USAA Visa 2,380
 Dissipated Assets 4,005 _______ _______
TOTALS $176,235 $176,235
Appellant was also found to be in arrears of temporary support, in a total amount of $1,730.75, to be reduced by $346.15 held in escrow. The court denied appellee's request for $4,267 in attorney fees. The court entered other orders, the facts and issues of which we will address within the context of the assignments of error.
Appellant now appeals, setting forth the following four assignments of error;
 "I. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT INCORRECTLY IMPOSED ON THE APPELLANT THE STANDARD OF PROOF OF CLEAR AND CONVINCING EVIDENCE ON HIS CLAIM THAT A PAYMENT BY HIS MOTHER CREATED A MARITAL DEBT. THE DECISION BY THE TRIAL COURT IS ARBITRARY AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 "II. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT PENALIZED THE APPELLANT IN THE DIVISION OF PERSONAL PROPERTY FOR HIS FAILURE TO ABIDE BY AN ORDER WHICH DOES NOT EXIST. THE DECISION DIVIDING THE PERSONAL PROPERTY IS UNREASONABLE, ARBITRARY AND UNCONSCIONABLE.
 "III. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FOUND THAT THE APPELLANT COMMITTED FINANCIAL MISCONDUCT DURING THE PENDENCY OF THE DIVORCE. THE DECISION OF THE TRIAL COURT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND ARBITRARY.
 "IV. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT MADE ITS AWARD OF SPOUSAL SUPPORT AS IT MISCONSTRUED THE EVIDENCE OF THE APPELLANT'S CURRENT INCOME. THE DECISION OF THE TRIAL COURT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, ARBITRARY AND UNREASONABLE."
 I.
Appellant, in his first assignment of error, contends that the trial court applied the wrong standard in determining whether money provided by appellant's mother to pay off the home mortgage was a loan or a gift.
The classification of property as a loan or a gift is a factual determination and is reviewed by this court under a manifest weight standard of review. Johnson v. Johnson (Sept. 27, 1999), Warren App. No. CA99-01-001, unreported; Bertsch v. Bertsch (Nov. 19, 1997), Wayne App. No. 97CA0009, unreported. The factual findings accompanying the trial court's classification of property as marital or separate "are reviewed to determine whether they are supported by competent, credible evidence." Johnson, supra. See also, Crull v. Maple Park Body Shop
(1987), 36 Ohio App.3d 153. If the judgment of the lower court is supported by some competent, credible evidence going to all the essential elements of the case, it will not be reversed by a reviewing court as being against the weight of the evidence. Seasons Coal Co., Inc. v. Cityof Cleveland (1984), 10 Ohio St.2d 77, 80. See also Bertsch v. Bertsch,supra.
In this case, the determination of whether or not the $25,000 sum used to pay off the parties' mortgage and other debts depended on the credibility of the witnesses. Appellant offered nothing in writing, other than a recently signed affidavit from his mother, to show that the $25,000 was, in fact, a loan. No payment schedule or evidence of any payments to the mother was offered. Unlike his brother, who was required to sign a legally prepared promissory note when he borrowed money from his mother, appellant had not even met with his mother's attorney to discuss the drafting of a loan agreement. From this evidence, the trial court could reasonably have concluded that appellant's mother gave the money to the parties without ever really expecting to be repaid. Therefore, upon a complete review of the evidence presented, we cannot say that the trial court's determination of a gift was against the manifest weight of the evidence.
Accordingly, appellant's first assignment of error is not well-taken.
 II.
Appellant, in his second assignment of error, argues that the trial court, when dividing assets, improperly penalized him for his alleged failure to abide by an order referred to by the court, even though that order did not exist.
Since a court speaks only through its journal entry, it is imperative that the court's journal properly reflect the true course of events.State ex rel. Worcester v. Donnellon (1990), 49 Ohio St.3d 117, 118, limited on other grounds by State ex rel. Neff v. Corrigan (1996),75 Ohio St.3d 12. All "litigants have a clear legal right to have the proceedings they are involved in correctly journalized." Id. at 119. Therefore, making an incorrect journal entry is a clear abuse of discretion by the trial court. Id. at 120; State v. Myers (1997),119 Ohio App.3d 642, 645.
In this case, the trial court's findings entered in its judgment entry are conflicting and problematic in several respects.[1] First, the judgment entry refers to an "order" given at the end of the first day of trial regarding the parties' inventory of certain household goods. Appellant is correct that no such order was made. At the close of the hearing on the second day, the trial court stated to the attorneys for both parties:
 "THE COURT: * * * the only other issue is all of these items of personal property. My inclination is to send you all out this afternoon and do an inventory of it. I don't know how else to do it. There is a big, he said, she said problem here that goes well beyond credibility here. If these things are in existence, we ought to make a list of these and at least get an agreed upon list of what's in existence. * * * [W]hat I suggest you do is go out and if you both have a little bit of time this afternoon — he says he's got it in storage somewhere. She says she's got the Indian paraphernalia. I suggest you turn that over to Counsel on the way out of the parking lot today. I suggest you get down to Sandusky and over to Rambo or wherever he's got this stuff and get a list.
"[Appellee's attorney]: I have to go to Detroit.
 "THE COURT: Then you have tomorrow to do it. All right. Thank you, briefs due in three weeks."
In our view, the court suggested, rather than ordered, that the parties and their attorneys conduct an on-site inventory of the personal property in each parties' possession. The completion of such an inventory then contemplated the submission of an agreed upon listing of what items remained to be divided.
However, there is no record of any inventory lists being submitted by the parties; likewise, no further testimony, evidence or motions were presented to address this omission. In a post-trial brief, appellee's attorney alleged that appellant was uncooperative with this suggested inventory; appellant denied these allegations and objected to appellee's improper inclusion of such unsupported statements in the post-trial brief. The allegations in the brief were merely hearsay and not properly before the trial court. In fact, the record reveals that both parties admitted during the final hearing to taking or hiding items from each other. Therefore, the trial court, in its recollection of a non-existent order and incorporation of inadmissible "facts" from appellee's post-trial brief, improperly chastised appellant when it presumed that appellant had the "missing" items.
A trial court's division of marital property will not be reversed absent an abuse of discretion. Holcomb v. Holcomb (1989),44 Ohio St.3d 128, 130; Martin v. Martin (1985), 18 Ohio St.3d 292,294-295. In this case, the trial court awarded each party the personal property that is in their possession. Then, with the limited evidence available to it, the court found that appellant "possesses a much greater share of the personal property." This determination was based upon an improper presumption from the "evidence" alleged in appellee's post-trial brief. In the absence of some definitive evidence that appellant did, in fact, possess most of the property, the trial court did not have sufficient evidence before it to make such a determination. Therefore, in our view, the trial court should have simply awarded each party those items already in their possession.
We also note, that, although the trial court ordered appellee to pay one-half of the cost to clean the house in preparation for sale, it failed to include this in its division of assets. The court also failed to include an order as to payment of the Visa debt.
Accordingly, appellant's second assignment of error is well-taken.
 III.
Appellant, in his third assignment of error, claims that the trial court erred in finding that he had misused marital funds during the pendency of the divorce.
R.C. 3105.171(E)(3) provides in pertinent part as follows:
 "(3) If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property."
The financial misconduct statute should apply only if the spouse engaged in some type of wrongdoing. Hammond v. Brown (Sept. 14, 1995), Cuyahoga App. No. 67268, unreported. "Typically, the offending spouse will either profit from the misconduct or intentionally defeat the other spouse's distribution of marital assets." Id.
The time frame in which the alleged misconduct occurs may often demonstrate wrongful scienter, i.e., use of marital assets or funds during the pendency of or immediately prior to filing for divorce. SeeBabka v. Babka, (1992), 83 Ohio App.3d 428 (account liquidated "just prior to the parties' divorce"); Gray v. Gray (Dec. 8, 1994), Cuyahoga App. No. 66565, unreported (transferring or withdrawing funds during separation period in order to secret them from the other spouse);Spychalski v. Spychalski (1992), 80 Ohio App.3d 10 (dissipation of wrongful death settlement obtained while parties divorce complaint was pending). An allegation of financial misconduct, unsupported by evidence of wrongdoing, will not support a dissipation award. Rinehart v.Rinehart (May 18, 1998), Gallia App. No. 96 CA 10, unreported.
In this case, the court's determination of dissipation of assets was based upon appellant holding a garage sale from which he made $185 and his failure to pay $1,500 of equity line payments and fees as ordered during the pendency of the divorce. The court also considered evidence of check payments issued to a woman travel agent ("travel checks")from 1990 to 1994, well before the filing of the divorce.
We will first address the issue of the travel checks. Both parties testified that they took yearly vacations during the last five years of the marriage. Appellant stated that the checks, most of which were for uneven amounts, were made in payment for travel arrangements.[2]
Appellant acknowledged that he and the travel agent later became romantically involved during the pendency of the divorce action. However, appellee presented no evidence to demonstrate that the affair was occurring at the time checks were issued which was prior to the divorce proceedings or that the amounts spent were not, in fact, for the parties' travel arrangements. Therefore, we conclude that the evidence does not support a finding that checks designated as travel expense payments, which were written two or more years before the filing of the divorce, constituted dissipation of funds.
During the pendency of the divorce, appellant admitted, however, that he stopped making payments on the equity loan, and instead contributed to the rent and household expenses of his travel agent/girlfriend. Those payments do constitute a benefit to appellant and a detriment to appellee's interests, and thus, may be considered as dissipated marital funds.
Appellant also acknowledged holding a garage sale after the divorce was filed, despite an order not to dispose of marital assets. We agree that such an action may be considered in determining whether or not a party dissipated assets. In this case, however, the list provided by appellant as to the items sold and the resulting $185 proceeds, includes typical household items of very little use or value. Moreover, appellee did not dispute that these were the items sold, did not present evidence that appellant sold any items for less than their value, or indicate that she wanted any of the items. In our view, the garage sale represents an issue of contempt, rather than a dissipation of assets. Since appellant was not found to be in contempt, we conclude that the crediting of one-half of the proceeds to appellee would provide a more appropriate remedy.
Accordingly, appellant's third assignment of error is well-taken as to the amount attributed to the travel checks ($2,505.10), but is not well-taken as to the $1,500 attributed to the equity payments which were diverted as rent contributions to the girlfriend during the pendency of the divorce and to one-half of the proceeds ($92.50) from the garage sale.
 IV.
Appellant, in his fourth assignment of error, argues that the trial court erred when it based its award of spousal support upon an incorrect income amount.
A trial court has broad discretion when determining awards of spousal support. Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 67; Cherry v.Cherry (1981), 66 Ohio St.2d 348, 355. Absent an abuse of that discretion, an appellate court will not disturb the trial court's judgment on appeal. Kunkle, supra; _Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore,supra.
"Spousal support" is defined to include payments made for both the sustenance and support of the former spouse. R.C. 3105.18(A). Spousal support does not include payments made as part of a division or distribution of marital property. Id. To determine the necessity for and amount of spousal support, the trial court must consider the fourteen factors provided in R.C. 3105.18(C)(1), including, but not limited to: 1)the relative earning abilities of the parties, 2) the ages and physical, mental, and emotional conditions of the parties, 3) the retirement benefits of the parties, 4) the duration of the marriage, 5) the standard of living of the parties established during the marriage, 6)the relative education of the parties, 7) the relative assets and debts of the parties, including but not limited to any court-ordered payments by the parties, 8) the tax consequences for each party of an award of spousal support, or 9) any other factor that the court expressly finds to be relevant and equitable. Id. In cases involving a marriage of long duration, or a homemaker-spouse with little opportunity to develop meaningful employment outside the home, a trial court's award of spousal support for life is proper. Layne v. Layne (1992), 83 Ohio App.3d 559,563; Noll v. Noll (1989), 55 Ohio App.3d 160, 163; see also Kunkle v.Kunkle (1990), 51 Ohio St.3d 64, 69.
As we previously noted, making an incorrect journal entry is a clear abuse of discretion by the trial court. State v. Myers (1997),119 Ohio App.3d 642, 645. In this case, appellant's military reserve earnings of $14,000 to $19,000 annually ended when he retired from that position in November 1996. Appellant's military position required that he spend weekends, some weekdays, and two weeks in summer at army facilities in either Columbus or Akron-Canton, Ohio. Appellant stated that he chose to retire in November 1996, because he had completed thirty years of service, had developed physical problems, and his new job required him to work longer hours, including weekends, which prevented him from putting in the necessary time for his reserve position. Nothing in the record demonstrates that appellant's decision to retire from this job was motivated by anything but circumstances surrounding appellant's new sales position. Thus, this amount should be excluded when calculating appellant's current income.
There was also some confusion at the hearings as to appellant's ability to collect his military pension and appellant's date of birth. At one point, the trial court was under the impression that appellant was born in 1940, rather than 1946. The court stated in the judgment entry that appellant was fifty-six years old and "is receiving pension benefits from the Army National guard in the amount of $1,085.33 per month."[3]
However, those findings are factually incorrect.
At the time of the hearings, appellant was only fifty and by the time the court entered final judgment in August 1999, appellant was just a month shy of fifty-three.[4] Appellant testified that he would not be able to collect his military pension of approximately $1,000 per month, until he turned sixty. In other words, appellant would not begin receiving any military pension payments until after September 2006. Appellee was awarded one-half of those benefits by the filing of a QDRO, which she will receive when appellant begins to collect them.
The remaining evidence as to appellant's earning ability and income was that he was forced to take a buy-out from his twenty-eight and one-half year employment. Appellant first went through training and became a licensed real estate agent, but failed to realize any significant earnings from that position. Appellant then took a job as a sales representative for a food service company. Although appellant has more education and job experience than appellee, the fact remains that he is a man in his fifties seeking to establish a career in a new field. As such, he is likely to start at a lower wage level than his previously long-term established position. Appellee offered nothing to show that appellant had received or turned down more lucrative employment offers. The trial court found that appellant was then earning $39,000 per year. This figure, based upon the 1996 tax return provided by appellant, included approximately $14,500 of military reserve income, however, and does not accurately represent appellant's then current income.
Appellant's income of $23,467 was only for ten months of 1996. The court did not impute income to appellant or find that he was voluntarily underemployed. In our view, the better approach is to calculate a twelve month income by adding $2,350 per month for the remaining two months to arrive at a yearly income of approximately $28,167. This represents a twenty-eight percent reduction in appellant's income; appellee's spousal support should be reduced by a proportionate percentage. Therefore, we conclude that the trial court's inaccurate determination of appellant's income was against the manifest weight of the evidence and the amount of spousal support awarded was an abuse of discretion.
Accordingly, appellant's fourth assignment of error is well-taken.
Pursuant to App.R. 12(E), we hereby institute the judgment which should have been rendered by the trial court. The following modifications are made to the final divorce judgment entry:
 "Appellant's income is calculated to be $28,167 per year. Appellant is ordered to pay appellee $864 per month, plus poundage, for nine years from the date of the original decree, reviewable upon appellant's retirement, a significant increase in appellant's wages, upon the death of either party, or upon remarriage or cohabitation by appellee.
Appellee is ordered to pay $6,565 ($2,380 + $4,185) and appellant is ordered to pay $4,185 of the USAA Visa debt.
"The final distribution of assets and debts are distributed as follows:
Wife Husband
ASSETS
Marital Residence (from escrow) $37,342 $38,964
1989 GMAC Jimmy (vehicle) 5,245
1989 Honda Accord (vehicle) 5,260
Fifth Third Checking Acct. 342
Metropolitan Life Ins. Policy 2,500
Merrill Lynch IRA 111,661 111,661
Army National Guard Pension X X
Motorcycle 200
Household items and furnishings X X
Home Equity 5,000 2,900
USAA Visa 2,380
House cleaning(1/2) 1,250
Dissipated Assets 1,592
 _______ _______ TOTALS $162,878 $162,877
The judgment of the Lucas County Court of Common Pleas, Domestic Relations division, is affirmed in part and reversed in part and modified. Court costs of this appeal are to be divided equally between the parties.
 James R. Sherck, J., Richard W. Knepper, P.J. Mark L. Pietrykowski, J., JUDGES CONCUR.
 ____________________________ JUDGE
[1] We note that the final hearing in this case took place in May 1997 and the trial court failed to enter judgment until August 1999. This extreme delay likely contributed to the trial court's mistaken recollection of the facts presented and the "orders" given.
[2] The checks and amounts, made payable to the travel agent, offered were as follows:
 November 30, 1990 $162.17 December 15, 1990 69.96 December 26, 1990 206.00 February 10, 1991 44.00 April 12, 1991 117.00 June 10, 1991 104.00 July 29, 1991 30.86 December 21, 1991 25.00 January 25, 1992 141.41 January 28, 1993 358.70 February 24, 1993 300.00 May 14, 1993 100.00 February 10, 1994 737.00 (memo "trip") July 20, 1994 50.00
An additional check for $59 was offered, written early in October 1990 but made out to a woman with the same last name as the travel agent, but a different first name.
[3] Despite a thorough review of the record, we have been unable to discover the source of this figure.
[4] Appellant's birthday is September 25, 1946. The court clarified this fact at the end of the final day of hearing.