OPINION
 "I. THE JUDGMENT APPEALED FROM IS VOID BECAUSE THE TRIAL JUDGE'S TERM OF OFFICE HAD EXPIRED BY THE TIME SAID JUDGMENT WAS JOURNALIZED.
 "II. IT CONSTITUTED ERROR TO AWARD LIFETIME SPOUSAL SUPPORT IN THE AMOUNT OF $600.00 PER MONTH.
 "III. IT CONSTITUTED ERROR TO ORDER THAT SPOUSAL SUPPORT WILL BE A CHARGE AGAINST APPELLANT'S ESTATE.
 "IV. IT CONSTITUTED ERROR TO DEFER DISTRIBUTION OF APPELLANT'S SHARE OF THE DISTRIBUTIVE AWARD AND TO SECURE PAYMENT OF SPOUSAL SUPPORT WITH A LIEN AGAINST APPELLANT'S SHARE THEREOF.
 "V. IT CONSTITUTED ERROR NOT TO AWARD INTEREST ON THAT PORTION OF THE DISTRIBUTIVE AWARD WHICH CONSTITUTES APPELLANT'S SHARE OF THE MARITAL RESIDENCE.
 "VI. IT CONSTITUTED ERROR TO ADMIT INTO EVIDENCE A REAL ESTATE APPRAISAL WITHOUT TESTIMONY FROM THE PERSON WHO PREPARED THE APPRAISAL.
 "VII. IT CONSTITUTED ERROR FOR THE TRIAL COURT TO DETERMINE A VALUE OF APPELLANT'S SOCIAL SECURITY RETIREMENT BENEFITS AND APPELLEE'S PENSION BENEFITS AND 401(K) PLAN.
 "VIII. THE ATTORNEY FEE AWARD IN FAVOR OF APPELLEE CONSTITUTED ERROR.
 "IX. CONSIDERING THE TOTALITY OF THE CIRCUMSTANCES, THE DIVORCE DECREE AS A WHOLE CONSTITUTES AN ABUSE OF DISCRETION.
 "X. IT CONSTITUTED ERROR TO REFUSE TO GRANT A CONTINUANCE TO ALLOW APPELLANT TO BE PRESENT FOR TRIAL."
Appellant and appellee were married on November 25, 1967. Three children, who are now emancipated, were born of the marriage. On October 11, 1994, appellee filed a complaint for divorce and on October 27, 1994, appellant filed an answer and counterclaim for divorce. On August 27, 1996, the case proceeded to a trial at which appellant did not appear, but appellant's counsel was present. At the trial, appellee testified and submitted evidence in support of her case. Thereafter, appellant's trial counsel filed a motion to permit appellant to testify by way of deposition. The court granted the motion and on November 22, 1996, appellant filed his deposition with the trial court. Pursuant to the trial and appellant's deposition, the following evidence was presented.
At the time of the trial below, appellee was forty-eight years old and appellant was fifty years old. Appellee has a ninth grade education and appellant is a high school graduate. When they married, both appellant and appellee were employed, but when they began having children in 1970, the parties agreed that appellee would be the primary caretaker of the children and appellant would financially support the family. Throughout the marriage, appellant worked at various jobs in the areas of auto parts repair, construction equipment repair, and auto service management. His employment took the family to various locations throughout Ohio and Georgia. His income fluctuated over the years, but from 1991 to 1994, appellant's annual income rose steadily to approximately $52,000. In 1978, appellee began to work as a school bus driver on a part-time basis making minimum wage. She also had other part-time jobs over the years that also paid minimum wage. At the time of the trial below, appellee's job as a school bus driver paid her approximately $15,000 per year. In addition, she pays into a state pension fund and receives health insurance and other benefits. Appellee testified that in the Otsego School District, the school bus drivers are permitted to keep their buses at their homes. Because of where the parties' marital home is located, appellee has a bus route that requires her to work more hours than other drivers. She testified that if she was required to move out of the marital home, she would have to relinquish her bus route and her income would decrease. She also testified that as a school bus driver in the Otsego School District, she is required to live in the district and if she had to move out of the district and drive for another school district, she would lose the seniority that she presently has as a driver in the Otsego School District.
In 1976, the parties contracted to have the marital home built in Grand Rapids, Ohio. The parties contributed labor in building the house and took out a mortgage of $58,000 to finance the building. In May 1994, appellee moved out of the home. Thereafter, in January 1996, appellant moved out of the home and moved to Florida and appellee moved back into the home. At one point during the divorce proceedings, the parties agreed to sell the home and listed it for $129,000, but received no offers. At the trial below, appellee, in compliance with the court's order, submitted an appraisal of the marital home over appellant's objection. Appellant asserted that the appraisal was inadmissable because the appraiser was not in court to authenticate it. The court overruled the objection and accepted the appraised value of the home at $95,000. As of July 10, 1996, the balance remaining on the mortgage was $23,284.65, giving the parties equity in the marital home of approximately $71,717.
Other assets of the marriage included two motorcycles, two cars, a truck and accumulated household goods and furnishings. At the time of the trial below, appellee was in possession of a car and a motorcycle which were owned free and clear. She valued the car at $4,000 and the motorcycle at $200. Appellant was in possession of a car, which he purchased in March 1996 for $13,200, and a motorcycle. $13,000 and $2,300 were owed on the car and motorcycle respectively. Neither party submitted evidence on the values of this motorcycle or car. Regarding the household goods and furnishings, appellant had removed some items from the marital home, in violation of court order, when he moved to Florida in January 1996, and appellee remained in possession of the remainder of the items.
Appellee further testified and submitted evidence regarding her retirement plan through the School Employees Retirement System ("SERS"). As of June 28, 1996, she had contributed $12,837.88 over 16.772 years. However, neither party offered evidence of the current value, including employer contributions and accumulated interest, of the plan. Regarding this plan, appellee testified that she would not be eligible to receive her pension until she was sixty-two years old and that she would only receive full benefits if she had worked and paid into the pension fund for at least twenty-five years. Evidence admitted in the trial below also revealed that appellee pays $50 every two weeks into an individual retirement account. As of June 30, 1996, appellee had paid $2,175 into the plan and the plan had a cash surrender value of $2,285. Appellant testified that he did not have any pension benefits, bank accounts, savings, stocks, bonds or investments. In addition, he submitted no evidence or testimony regarding social security benefits.
Evidence was also presented as to the outstanding bills of the marriage. Since the parties' separation, appellee was paying the monthly mortgage payment of $548.43, utilities on the marital home, payments on a Montgomery Ward credit card, and payments on two Visa credit cards. Of her approximately $800 in take home pay each month, appellee testified that after her expenses, she has nothing left over.
Appellant testified that his take home pay at the time of the trial was $1,400 per month and that after his expenses were paid he had approximately $100 to $150 remaining. Appellant stated that he paid Sandra Kruzel, his girlfriend with whom he lived in Florida, between $550 and $600 per month toward living expenses. In addition, appellant paid $125 on a Visa account which had an outstanding balance of $2,900, $100 toward a dental bill to which the outstanding balance was not submitted, and $110 toward his motorcycle on which he owed $2,000. Appellant also owed $9,000 to the IRS in back taxes and $2,300 to the state of Michigan for reasons which were unclear. At the time of the trial, however, appellant was not making any payments to the IRS or the state of Michigan. Each party also had outstanding attorney bills at the time of trial. Appellee owed her attorney $5,216.05 and appellant owed his attorney $4,000.
Finally, with regard to the issue of spousal support, appellee testified that she would be satisfied with an award for nine years. Such an award, she stated, would allow her to continue working as a school bus driver and would therefore allow her to pay into SERS for twenty-five years. Although she would only be fifty-seven upon the termination of the support, she would receive full benefits upon her retirement at age sixty-two.
On February 14, 1997, the trial court filed a decision and judgment entry which granted the parties a divorce. The court then awarded each party the right, title and interest in all furniture, furnishings and appliances that each had at that time in their possession. The court did not assign a value to this property but specifically noted that neither party sought an appraisal of the property, and the parties were satisfied with the division and did not dispute the ownership of any of the items. The court further awarded each party full ownership of the cars, motorcycles and truck that each then had in his or her possession, subject to any existing liens. Again, the court did not assign a value to these items of property because neither party submitted an appraised value of the property and each party was satisfied with the division. Next, the court awarded appellee her SERS pension accumulated over the last 16.772 years and her IRA free of any claim of appellant and awarded appellant his Social Security benefits accumulated over the last twenty-eight years of the marriage, "other than any spouse's benefit the plaintiff may be entitled to after her receipt of SERS in the future." The court then addressed the issue of the marital home. The court determined the equity in the home to be $71,715, awarded all of the right, title and interest in the home to appellee, and ordered her to pay the mortgage, taxes, assessments and insurance on the home. In making this award, the court specifically held that due to appellee's longstanding relationship with SERS and the geographic restrictions of her employment, she would suffer a further loss in her standard of living if the home were sold. The court then awarded appellant a note and second mortgage on the residence of $35,857.50 to be paid to him in full upon the happening of the first of the following events: "(1) when the plaintiff dies; or (2) when the plaintiff remarries, and/or (3) $17,928.75 on November 15, 2003, and $17,928.75 on November 15, 2010," subject to various conditions. The court further awarded appellee spousal support in the amount of $600 per month until her death or remarriage, or until appellant's death, provided that his estate continue to pay appellee spousal support from the proceeds of a life insurance policy which the court ordered appellant to purchase in the amount of $50,000. The court then determined that if appellee failed to comply with the terms of the spousal support award and insurance order, upon his death any spousal support arrears would constitute a lien against his estate, and that if appellant failed to comply with the terms of the spousal support award, any arrears would be deducted from the amount appellee owes appellant for his share of the equity in the marital home. Finally, the court awarded appellee attorney fees in the amount of $3,500 and ordered appellant to pay those fees within six months of the date of the order. It is from that judgment that appellant now appeals.
In his first assignment of error, appellant challenges the authority of the trial judge to enter the judgment from which he has appealed. When appellee's complaint for divorce was originally filed, Judge June Rose Galvin was assigned to the case. Judge Galvin conducted the trial below but then retired in January 1997. Nevertheless, Judge Galvin signed the decision and judgment entry at issue herein. Appellant contends that because she had retired, Judge Galvin did not have the authority to enter the judgment on February 14, 1997. The supplemental record in this case, filed on May 11, 1998, reveals that on February 11, 1997, Thomas J. Moyer, Chief Justice of the Supreme Court of Ohio, assigned Judge Galvin to preside in this matter. Judge Galvin, therefore, had the authority to issue the decision and judgment entry subsequent to her retirement and the first assignment of error is not well-taken.
We will next address the tenth assignment of error in which appellant asserts that the trial court abused its discretion in failing to grant him a continuance on the day of trial. The circumstances leading up to the request for a continuance are as follows. On the day of trial, appellee, appellee's trial counsel and appellant's trial counsel appeared in court. The court then questioned appellant's counsel as to the whereabouts of appellant. Appellant's counsel responded that appellant resided in Florida, that appellant was aware of the trial date and that it was counsel's understanding that appellant intended to be there. Counsel further stated that he did not know where his client was and that it would be helpful to him to have appellant's assistance for cross-examination. He therefore requested a continuance, which the court denied.
The granting or denial of a continuance is a matter that is left to the sound discretion of the trial court. Heard v.Sharp (1988), 50 Ohio App.3d 34, 35.
 "To constitute a sufficient ground for a continuance because of the absence of a party, it must appear that the absence is unavoidable and not voluntary, that the party's presence at trial is necessary, that the application is made in good faith, and that the party will be able to attend court at some reasonable future time." Id. citing State ex rel. Buck v. McCabe (1942), 140 Ohio St. 535.
The record reveals that on May 28, 1996, appellant was informed of the trial date when the parties and their attorneys went to the assignment commissioner's office to obtain a trial date. There is no evidence in the record, however, that appellant, or appellee for that matter, was officially notified of the trial date by the court. The record does reveal that appellant never notified the court of his new address once he moved to Florida. After the move, his address on all of the pleadings, including those filed by him, continued to be the marital home or in care of his attorney, with his attorney's address listed. Evidence at the trial below revealed that appellant made every effort to prevent appellee from learning his address in Florida. Nevertheless, the trial court did, after the trial, allow appellant to testify by way of deposition, and the court's decision reveals that the court considered appellant's testimony in reaching a decision.
Given the foregoing, we cannot say that the trial court abused its discretion in denying appellant's motion for a continuance. The tenth assignment of error is therefore not well-taken.
In his sixth assignment of error, appellant challenges the trial court's admission of the appraisal of the marital home. At the trial below, appellee introduced into evidence an appraisal of the marital home pursuant to the court's order that both parties obtain and submit a real estate appraisal of the home. Appellant objected on the ground that the person who conducted the appraisal was not in court to authenticate the document. The court overruled the objection and noted that appellant had not complied with the court's order to submit an appraisal and that the court was statutorily mandated to obtain the fair market value of the marital home. Appellee's counsel then asked appellee if she agreed with the appraised value of the home, $95,000, and she stated that she did.
Documentary evidence must be authenticated or identified as a condition precedent to its admissibility. St. Paul Fire Marine Ins. Co. v. Ohio Fast Freight, Inc. (1982), 8 Ohio App.3d 155,157. Evid.R. 901(A) states that "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." "The common manner of identifying a document is through testimony of a witness with knowledge." St. Paul Fire and Marine Ins. Co,supra, at 158, citing Evid.R. 901(B)(1). In the trial below, appellee introduced the appraisal as follows:
 "Q. Ms. Guthrie, would you please identify plaintiff's exhibit number 3 which is the original? Would you please do that for the court?
 "A. Yes, this is the appraisal that I done [sic] on my home.
 "Q. Do you remember the gentlemen [sic] that came out to your house?
"A. Yes, I do.
"Q. Did you meet him?
"A. Yes, I did.
"Q. Did he introduce himself to you?
"A. Yes, he did.
"Q. Do you have any questions about the appraisal?
"A. No.
 "Q. Do you believe that the $95,000 I am referring to on page 3 of the appraisal, the $95,000 appraisal by Mr. Mineff, the appraisal/consultant is a fair appraisal of your home?
"* * *
"A. Yes, I do."
In St. Paul, supra, the court held that either the person who sent a check or the person who received it could testify with knowledge that it was what it appeared to be. Similarly, in the present case, appellee, who contracted to have the appraisal done and who received the appraisal after it was done, could testify that the document regarding the appraisal was what it appeared to be. That is all that the evidence rules require for a document to be properly authenticated. In addition, it is well-settled that "* * * an owner is permitted to testify concerning the value of his property without being qualified as an expert, because he is presumed to be familiar with it from having purchased or dealt with it." Tokles Sons, Inc. v. Midwestern Indem. Co. (1992),65 Ohio St.3d 621, paragraph two of the syllabus.
Accordingly, the trial court did not abuse its discretion in admitting appellee's appraisal of the marital home and the sixth assignment of error is not well-taken.
The fourth, fifth and seventh assignments of error address the trial court's distribution of the parties' assets. The Supreme Court of Ohio has long recognized that a trial court is vested with broad discretion in fashioning its division of marital property. Bisker v. Bisker (1994), 69 Ohio St.3d 608, 609. R.C.3105.171(B) and (C)(1) provide that in a divorce proceeding, all marital property is to be divided equally unless an equal division would be inequitable. If an equal division would be inequitable, the marital property is to be divided in an equitable manner. Moreover, R.C. 3105.171(E) provides that in order to effectuate a division of marital property, and in order to achieve equity between the parties, the court may make a distributive award. Finally, R.C. 3105.171(F) sets forth the factors which the trial court shall consider in making a division of marital property and in determining whether to make, and the amount of, any distributive award. Those factors are:
"(1) The duration of the marriage;
"(2) The assets and liabilities of the spouses;
 "(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
"(4) The liquidity of the property to be distributed;
 "(5) The economic desirability of retaining intact an asset or an interest in an asset;
 "(6) The tax consequences of the property division upon the respective awards to be made to each spouse;
 "(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
 "(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
 "(9) Any other factor that the court expressly finds to be relevant and equitable."
This court, when reviewing a trial court's property division, must consider the distribution in its entirety under the totality of the circumstances. Jelen v. Jelen (1993), 86 Ohio App.3d 199,203. We cannot reverse the trial court's judgment absent an abuse of discretion; that is, unless the trial court's attitude is unreasonable, arbitrary or unconscionable. Booth v. Booth (1989),44 Ohio St.3d 142, 144.
In exercising its discretion to reach an equitable division of the marital estate, a trial court is required to value all the property of the parties. Goode v. Goode (1991), 70 Ohio App.3d 125,132. While the trial court also has discretion to develop some means of value, it is not permitted to omit valuation altogether. Id. When faced with a situation in which the trial court failed to classify and value all of the property, an appellate court cannot effectively review the property distribution. Kaechele v. Kaechele (1988), 35 Ohio St.3d 93, paragraph two of the syllabus.
In the present case, appellee submitted evidence that as of May 31, 1996, she had paid $12,837.88 into the SERS plan and as of June 30, 1996, she had paid $2,175 into her IRA. The court, based on those figures, awarded appellee those retirement benefits. Neither of these amounts includes employer contributions or accumulated interest or indicates the present or future values of those plans. In addition, the court awarded appellant his Social Security benefits without any evidence whatsoever as to the present or future value of those benefits. While a trial court is vested with discretion to choose the method of valuing pension and retirement benefits, it must value them using some method. See Biggs v. Biggs (Aug. 16, 1996), Lucas App. No. L-95-214, unreported. (Emphasis added.) There are several acceptable methods a court may use to value those benefits so that it can divide and distribute them equitably. Powell v. Powell
(1989), 49 Ohio App.3d 56, 58. Moreover,
 "When considering the pension or retirement fund, the trial court must obtain a result which will preserve the asset so that each party can procure the most benefit. Thus, the trial court must have evidence before it detailing the intricacies and terms of the particular plan. Then, the trial court must make an equitable determination based upon the parties' overall financial situation, whether a direct division, or some other alternative, would be most appropriate to preserve the pension or retirement asset so that each party may derive the most benefit." Hoyt v. Hoyt (1990), 53 Ohio St.3d 177, 181.
In the present case, the trial court divided the parties' retirement benefits without determining their value or considering any of the matters set forth in Hoyt. We therefore find the seventh assignment of error well-taken.
In his fourth and fifth assignments of error, appellant challenges the trial court's treatment of the marital home in its property distribution. Specifically, appellant asserts that the court erred in deferring distribution of appellant's interest in the marital home until the years 2003 and 2010, in securing payment of spousal support by means of a lien on appellant's share of the distributive award, and in failing to award appellant interest on his share of the distributive award.
R.C. 3105.171(E) permits a court to make a distributive award to facilitate, effectuate or supplement a division of marital property; or, in lieu of a division of marital property, in order to achieve equity between the spouses if the court determines that a division of the marital property in kind or in money would be impractical or burdensome. In the present case, the court awarded appellee the marital home after determining that it would be inequitable to sell the home. The court then awarded appellant one-half of the equity in the marital home and ordered that it be paid upon appellee's death or remarriage or in installments of $17,928.75 in 2003 and 2010. The court, however, did not award appellant interest on these amounts. Courts routinely order distributive awards to be paid in installments over a period of years, see Clark v. Clark (Feb. 8, 1995), Summit App. No. 16516, unreported, and such awards are well within the trial court's discretion. Similarly, "[w]hether to award interest upon obligations arising out of the division of marital property is within the discretion of the trial court." Koegel v. Koegel
(1982), 69 Ohio St.2d 355, the syllabus; Clark, supra. Finally, a court may "secure a spouse's obligation to pay spousal support with a lien on the payor's property." Sergi v. Sergi (July 31, 1996), Summit App. No. 17476, unreported. "The decision whether to require security for * * * an obligation to pay spousal support lies within the sound discretion of the trial court." Id. citingClark, supra and Nori v. Nori (1989), 58 Ohio App.3d 69, 74. However, the trial court's failure to value the pension and retirement benefits prevents this court from effectively reviewing the propriety of the distribution of the property award in this case and thus the trial court's treatment of the marital home.Schuller v. Schuller (Feb. 7, 1997), Fulton App. No. F-96-012, unreported.
Accordingly, the fourth and fifth assignments of error are not ripe for review.
In his second and third assignments of error, appellant argues that the trial court erred in awarding appellee lifetime spousal support of $600 and erred in ordering that any unpaid spousal support, as of the date of appellant's death, be paid out of his estate and constitute a lien against his estate upon appellee's timely filing of a claim against the estate.
In Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 130, the Supreme Court of Ohio stated that "[a]fter a divorce has been granted, the trial court is required to equitably divide and distribute the marital estate between the parties and thereafter
consider whether an award of sustenance alimony would be appropriate." (Emphasis added) The determination of the need for and amount of sustenance alimony is a matter within the discretion of the domestic relations court. Kunkle v. Kunkle (1990), 51 Ohio St.3d 64,67. In exercising that discretion, the court must look to the factors set forth in R.C. 3105.18(C). While the award should provide for the termination of the award, there are circumstances in which an indefinite award is appropriate.Kunkle, supra at paragraph one of the syllabus. Thus, in reviewing an award of spousal support, the appellate court must look to the totality of the circumstances to ascertain whether the trial court acted arbitrarily, unreasonably or unconscionably.Spychalski v. Spychalski (1992), 80 Ohio App.3d 10, 20.
In the present case, the lower court's reevaluation of the property distribution on remand may affect that court's view of the spousal support issue. Accordingly, the issue of spousal support is not yet ripe for review and we will not consider the merits of appellant's arguments under the second and third assignments of error at this time. See Id. at 20.
In his eighth assignment of error, appellant contests the trial court's award of attorney fees to appellee. R.C.3105.18(H) permits an award of attorney fees in divorce proceedings. As this court recently stated:
 "The award of attorney fees in a divorce proceeding is a matter committed to the sound discretion of the trial court and, therefore, will not be disturbed on appeal absent an abuse of that discretion. Birath v. Birath
(1988), 53 Ohio App.3d 31, 39 * * *. When attorney fees are awarded in divorce proceedings, they are awarded as part of alimony. Consequently, the court must contemplate those same factors contained in R.C. 3105.18(B) [now (C)] that it considers when it makes an alimony award. The overriding consideration, however, is the financial ability of the party, against whom the award is made, to pay. Swanson v. Swanson (1976), 48 Ohio App.2d 85, 89, * * * citing Rivers v. Rivers (1968), 14 Ohio App.2d 120, * * *." Colello v. Colello (Aug. 9, 1996), Lucas App. No. L-95-322, unreported.
Because the property division must be reexamined by the court below, we find, as with the spousal support award, that the award of attorney fees is not ripe for review and that we cannot at this time consider the merits of appellant's eighth assignment of error.
Finally, in his ninth assignment of error, appellant asserts that under the totality of the circumstances, the trial court abused its discretion in entering the divorce decree at issue. To the extent that the trial court failed to properly value all of the property in the marital estate, we find this assignment of error well-taken. To the extent that this assignment of error challenges other aspects of the divorce decree, we find this assignment of error not ripe for review.
On consideration whereof, the court finds that substantial justice has not been done the party complaining and the judgment of the Lucas County Court of Common Pleas, Domestic Relations Division is reversed in part and affirmed in part. This cause is remanded to that court for further proceedings consistent with this opinion. Court costs of this appeal are ordered assessed equally between the parties.
 REVERSED IN PART AND AFFIRMED IN PART.
 George M. Glasser, J.
 Melvin L. Resnick, J.
 Richard W. Knepper, J.
CONCUR.