DECISION AND JUDGMENT ENTRY
This is an appeal from the Lucas County Court of Common Pleas, Domestic Relations Division, that granted the parties a divorce and ordered spousal support, child support, and the division of marital property. For the following reasons, we affirm the judgment of the trial court.
Appellant, Parker C. Freeman, sets forth the following assignments of error:
 "I. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FOUND THE BUSINESS, ADVANCED TECHNOLOGY RESOURCES, INC., TO BE MARITAL PROPERTY SUBJECT TO DIVISION.
 "II. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FOUND THE VALUE OF ADVANCED TECHNOLOGY RESOURCES, INC., TO BE $35,615.00 WITHOUT SUFFICIENT EVIDENCE TO ESTABLISH SAID VALUE.
 "III. THE TRIAL COURT ABUSED ITS DISCRETION BY NOT INSTRUCTING THE PARTIES TO SUBMIT EXPERT OPINION EVIDENCE AS TO THE VALUE OF ADVANCED TECHNOLOGY RESOURCES, INC.
 "IV. THE TRIAL COURT ABUSED ITS DISCRETION IN ITS DISTRIBUTION OF THE MARITAL ASSETS BETWEEN THE PARTIES IN THAT THE DISTRIBUTION WAS NEITHER EQUAL, NOR EQUITABLE.
 "V. THE TRIAL COURT ABUSED ITS DISCRETION BY REQUIRING APPELLANT TO PAY APPELLEE'S ATTORNEY FEES.
 "VI. THE TRIAL COURT ERRED BY REFUSING TO MODIFY THE PORTION OF ITS TEMPORARY ORDER PERTAINING TO THE PAYMENT OF MONTHLY EXPENSES. THESE UNMODIFIED PAYMENTS REPRESENT AN ABUSE OF DISCRETION ON THE PART OF THE TRIAL COURT."
The facts that are relevant to the issues raised on appeal are as follows. The parties were married in 1971 and had two children, Colin M. Freeman, born September 4, 1984, a minor, and Randall C. Freeman, an adult. Appellee, Elizabeth O. Freeman, filed for divorce on May 9, 1996.
The trial court entered a temporary order on July 2, 1996. Appellee was designated the residential parent and legal custodian of Colin. Additionally, appellant, Parker C. Freeman, was ordered to pay child support in the amount of $1,115.67 per month, plus 2 percent poundage, and spousal support in the amount of $1,500 per month, plus 2 percent poundage. The trial court further allocated the parties' monthly expenses. Several interim motions were filed by the parties. Then, on June 27, 1997, new counsel entered an appearance on appellant's behalf and filed a motion for modification of the trial court's July 2, 1996 temporary order concerning support payments.
Trial was held on July 18, 1997. Eventually, on June 24, 1998, the trial court entered its decision. The trial court noted that certain stipulations were read into the record, concerning, in part, allocation of certain marital property, including the values therefor. Additionally, with respect to Colin, the parties stipulated that appellee would be designated residential parent. The trial court found the stipulations to be fair and reasonable.
The parties submitted to the trial court for determination the following matters: (1) the incomes of the parties; (2) appellee's entitlement to spousal support, if any, and the amount and duration of support; (3) distribution of marital assets, including a determination of the value of appellant's interest in Advanced Technology Resources, Incorporated; (4) appellee's entitlement to an award of attorney's fees; (5) appellee's entitlement to reimbursement for certain expenses paid by her that were alleged to have been appellant's responsibility; (6) the amount of any arrearage owed appellant pursuant to the temporary support order; (7) the effect, if any, of appellant's June 17, 1997 motion seeking a modification of temporary support; and (8) appellant's interest, if any, in appellee's personal injury claim. The trial court determined the matters presented and, on September 4, 1998, the final judgment entry of divorce was filed.
Appellant's first, second, and third assignments of error each involve the trial court's findings concerning Advanced Technology Resources, Inc. ("ATR, Inc.") and, therefore, will be considered together. Appellant asserts that he was engaged in ATR, Inc. for a short period, between January and March 1995, while between other employment. However, as a condition of his subsequent employment with Blue Cross/Blue Shield of Michigan ("BC/BS of Michigan"), appellant asserts that he was required to sign off any interest he may have had in any other business, i.e., ATR, Inc. As such, appellant argues that the trial court abused its discretion in finding that ATR, Inc. was marital property subject to division. Appellant also argues that the trial court abused its discretion by choosing an amount between the parties' conflicting testimony as to value. As such, appellant argues that the trial court had insufficient evidence upon which to rely for its valuation. Finally, appellant argues that the trial court abused its discretion by not instructing the parties to submit expert opinion evidence as to the value of the business.
At trial, with respect to ATR, Inc., the following testimony and evidence was adduced. Appellant formed ATR, Inc. with Beth Lutz on or about January 1995 and did consulting work. ATR, Inc. was a "Subchapter-S" corporation. Appellant testified that he and Lutz were the original stockholders, each having a fifty percent interest. Appellant was the president. Appellant stated that he still had interest in the company:
 "Q. When did you transfer sale or otherwise dispose of your interest in this company?
"A. I have not yet today.
 "Q. Are you aware or just let me ask you this, were you in the room or present when your attorney represented to me you disclaimed having any interest in this business that you no longer have ownership in?
 "A. I never said that. I may have said I had no operating income from this business.
 "Q. So, whatever income this company generated, and whatever the value of this company is, you still have an interest in it?
"A. Yes, I do."
Appellant further testified that he expected to dissolve the business in 1997.
On appellant's federal tax return for 1995, he reported income from ATR, Inc. in the amount of $9,212. On his federal tax return for 1996, appellant reported income from ATR, Inc. in the amount of $8,620. Appellant testified that although he reported on his 1995 tax return that he had $9,212 income from ATR, Inc., he did not actually receive that amount in cash. Appellant explained that after he began working at BC/BS of Michigan, Lutz was responsible for all the billable hours because he had signed an ethics statement and non-compete agreement with BC/BS of Michigan that stated he could do no outside work. Appellant stated, in part:
 "* * * As such, the majority of the income coming into there, or the billings coming in, were hers and at the end of that year, we took a look at the respective incomes and to be personally up front, we had another employee at the same time that we had also that year, we were picking up, I believe, it was 10 or 15 an hour profit on him, so that was the total amount of income for the corporation for that year at which I took some amount out, I'm not exactly sure, I think it was $4,000 or $5,000 in cash, the rest stayed in there * * *."
Appellant accounted for the discrepancy in what he actually received and what he reported on his return by stating that it was due to the manner in which the business was structured. The "K-1" indicated that each had a fifty percent interest, so that is what he reported; however, Lutz did the majority of the work and, therefore, received most of the income. Appellant further stated that Lutz paid him for the taxes he owed on the money he reported but did not receive. Appellant testified that the same arrangement was done on his 1996 taxes; however, he actually only received about $800 in 1996 from ATR, Inc. Appellant offered no documentation in support of this alleged tax arrangement with Lutz.
With respect to the value of ATR, Inc., appellee offered a "County Return of Taxable Business Property," for the accounting period of January 1, 1996 to December 31, 1996, which Lutz had filed. The county return indicated that the corporation had assets totaling $41,348, which consisted of the following: computer equipment valuing $8,591; cash and deposits totaling $26,519; accounts receivable totaling $14,777; and a workers' compensation deposit totaling $52. The return also indicated that the corporation had total liabilities and net worth of $41,348, which were listed as follows: liabilities and/or deferred credits of $5,608; common stock of $125; and retained earnings of $35,615. A bank statement was also presented for ATR, Inc., dated March 11, 1997, which indicated a balance of $10,436.36. Nevertheless, when asked about the value of ATR, Inc., appellant stated, "[a]s far as I know, it is just about zero if you take out the assets such as computer and equipment * * *."
The trial court made the following ruling with respect to ATR, Inc.:
 "There are additional assets included within the marital estate. The Defendant owns fifty percent (50%) of the equity in an Ohio corporation known as [ATR, Inc.]. It is a closely held corporation; it is a `Sub-S' corporation for tax purposes; and it is in the business of information systems management. Neither party introduced any exhibit into evidence, or any expert testimony as to the value of this asset.
 "The Defendant testified that the stock had no value; that there is one other shareholder; and that he does not derive operating income from that entity. In fact, he has derived income from that business. See Plaintiff's Exhibit E [Appellant's 1995 Federal Tax Return]. In 1995, he received in excess of Nine Thousand Dollars ($9,000.00). In 1996, his tax return showed Eight Thousand Six Hundred Twenty Dollars ($8,620.00) from income attributed to the corporation. See Plaintiff's Exhibit C.[1] The Defendant claimed that this figure represented income attributed to his stock ownership, but that he never received that money, and further, that the other shareholder reimbursed him for the taxes attributed to this income. The Court notes that no document was introduced to substantiate this claim, or to evidence the transaction. In any event, whether or not the Defendant retained any income from this corporation does not answer the question of whether his interest has any value. Furthermore, the Defendant never testified he does not receive any income from ATR, Inc.; rather, no `operating income' which would not cover money received as consulting fees, for example.
 "The Plaintiff introduced Exhibits R and S to establish a value for ATR, Inc.; the former being a 1997 County Return of Taxable Business Property; the latter a bank statement showing an account balance in excess of Ten Thousand Dollars ($10,000.00) as of March of 1997. A review of these documents, as well as the 1995 and 1996 tax returns shows that a fifty percent (50%) ownership of ATR, Inc. has value.
 "ATR, Inc. has assets that far exceed liabilities, and it generates income. In the absence of expert testimony as to the fair market value of an asset, the Court must rely upon certain basic factors. ATR, Inc. was in existence for approximately eighteen (18) months at the time of trial. It is doubtful whether it has had time to generate any intangible assets; i.e., goodwill. In any event, the County tax return for 1996 shows that ATR, Inc. had cash and account receivables of Forty-one Thousand Two Hundred Ninety-six Dollars ($41,296.00); computer equipment having a cash value of Eight Thousand Five Hundred Ninety-one Dollars ($8,591.00); and liabilities of Five Thousand Six Hundred Eight Dollars ($5,608.00). Thus, the tangible net worth of the corporation in 1996 was approximately Forty-four Thousand Dollars ($44,000.00). The Defendant owns a fifty percent (50%) equity interest in that corporation. Accordingly, this equity interest would be worth at least one half (1/2) of the liquid net worth to the Defendant.
 "The value of an interest in a particular business to one of its shareholders is known as its extrinsic value; it is the value of the interest to the shareholder, as opposed to the fair market value of the interest. The fair market value of the Defendant's interest in ATR, Inc. may be greater than the intrinsic value given its history of income generation. However, in the absence of expert testimony as to the fair market value of the fifty percent (50%) ownership of ATR, Inc., the Court will use the extrinsic value of Thirty-five Thousand Six Hundred Fifteen Dollars ($35,615.00), which is calculated by adding the liquid assets less the liabilities. Fifty percent (50%) of that value, or Seventeen Thousand Eight Hundred Seven Dollars ($17,807.00) represents Defendant's interest, which is a marital asset subject to division."
We begin with the proposition that we must defer to the trial court as the finder of fact. The trial court was in the best position to view the witnesses, observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. Seasons CoalCo., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80. As such, a reviewing court should not substitute its judgment for that of the trial court. Id. The decision of that trier of fact, be it judge or jury, will not be reversed as being against the manifest weight of the evidence as long as it is supported by some competent, credible evidence going to each of the essential elements of the case. C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus; Vogel v. Wells (1991), 57 Ohio St.3d 91, 96.
In cases where the trial court values a closely-held business as part of a division of marital property, the court must have before it sufficient evidence to justify or support its valuation. Long v. Long (Aug. 8, 1997), Lucas App. No. L-96-240, unreported, citing, McCoy v. McCoy (1993), 91 Ohio App.3d 570,578. Further, the trial court is not free to simply choose a value between conflicting valuations. Id.
Appellant asserts in his first assignment of error that the trial court abused its discretion in attributing any value to ATR, Inc. because appellant had no interest in, or income generated from ATR, Inc. We disagree.
Appellant clearly testified at trial that he still had an interest in ATR, Inc. and that he planned to dissolve the corporation at a later time. Additionally, as of March 1997, ATR, Inc. had over $10,000 in its bank account. Moreover, appellant reported income from ATR, Inc. on both his 1995 and 1996 federal income tax returns. As such, we find that there was competent, credible evidence upon which the trial court could have relied in determining that ATR, Inc. was a marital asset.
Appellant next argues in his second and third assignments of error that the trial court abused its discretion in valuing ATR, Inc. at $35,615 because it lacked sufficient evidence to make a valuation. Appellant argues that the trial court improperly chose between competing testimony concerning value,i.e., appellant's testimony that he received no income from ATR, Inc., and appellee's presentation of the county tax return. Additionally, appellant argues that the trial court was required to submit the issue of valuation to a knowledgeable, disinterested party, i.e., an expert.
McCoy, 91 Ohio App.3d at 578, states that it is error for the trial court "[t]o achieve a middle of the road estimation without some basis for such an adjustment from one extreme or the other" because such a valuation would not be supported by the evidence. Contrary to appellant's assertions, the trial court did not choose a "middle of the road" valuation. Appellant testified that ATR, Inc. had no value and appellee presented the county tax return. Obviously rejecting appellant's valuation, the trial court determined ATR, Inc.'s value based upon the county tax return.
Moreover, we find that the trial court did not abuse its discretion because its valuation was supported by the evidence presented. The trial court was within its discretion to reject appellant's unsubstantiated assertions that he received no value from ATR, Inc., although he declared such on his federal tax returns. Additionally, we find that the trial court made an appropriate valuation of the business based upon its listed assets and liabilities on the county tax return.
Appellant argues that Mochko v. Mochko (1990), 63 Ohio App.3d 671, requires that "where the evidence demonstrates that a marital asset has a significant value, the question of its value should be submitted for valuations to a knowledgeable person who is a stranger to the proceedings." In Mochko, the court found that the trial court abused its discretion in dividing marital assets without evidence of their value. As such, in the absence of any evidence, a party could rely on Mochko to urge the court to appoint a disinterested and qualified appraiser to report to the court on the matter of value. Focke v. Focke (1992), 83 Ohio App.3d 552,556. However, in this case, evidence of value was presented and the trial court's valuation was substantiated by such evidence.
Based on the foregoing, we find that the trial court did not abuse its discretion in valuing and including ATR, Inc. as a marital asset. Accordingly, appellant's first, second, and third assignments of error are found not well-taken.
In his fourth assignment of error, appellant argues that the trial court abused its discretion in its distribution of the marital assets. In support of this argument, appellant focuses on one paragraph of the trial court's twenty-nine page opinion.
A trial court has broad discretion in making divisions of property in domestic cases. Berish v. Berish (1982), 69 Ohio St.2d 318,319. See, also, Middendorf v. Middendorf (1998),82 Ohio St.3d 397, 401. A trial court must have the discretion to do what is equitable upon the facts and circumstances of each case.Briganti v. Briganti (1984), 9 Ohio St.3d 220, 222. A reviewing court is limited to determining whether, considering the totality of the circumstances, the trial court abused its discretion. Id.
A trial court's decision will be upheld absent an abuse of discretion. Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 131;Martin v. Martin (1985), 18 Ohio St.3d 292, 294-295. "Abuse of discretion" is more than an error of law or judgment; it implies that the court acted in an unreasonable, arbitrary, or unconscionable fashion. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219. If there is some competent, credible evidence to support the trial court's decision, there is no abuse of discretion. See Ross v. Ross (1980), 64 Ohio St.2d 203.
A trial court must consider the guidelines of R.C.3105.171(F) when dividing marital assets, which provides:
 "(F) In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider all of the following factors:
"(1) The duration of the marriage;
"(2) The assets and liabilities of the spouses;
 "(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
"(4) The liquidity of the property to be distributed;
 "(5) The economic desirability of retaining intact an asset or an interest in an asset;
 "(6) The tax consequences of the property division upon the respective awards to be made to each spouse;
 "(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
 "(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
 "(9) Any other factor that the court expressly finds to be relevant and equitable."
Appellant quoted the following from the trial court's opinion:
 "`the Court has considered the fact that . . . a portion's [sic] of the Plaintiff's [Appellee's] assets are subject to capital gains taxation . . . Indeed, almost eighty-five percent (85%) of the Plaintiff's share is the equity in the former marital residence. . . . [Court's footnote four] In the event of a sale, the Plaintiff would most likely incur a real estate sales commission of approximately seven percent (7%).'"
Based upon this, appellant asserts that the trial court abused its discretion (1) in holding that appellee would be subjected to capital gain when selling the marital residence; (2) by ignoring any tax consequences appellant would incur in redeeming the assets he received; and (3) by considering real estate commissions appellee would have to pay should she sell the marital home.
We find, however, that appellant substantially misquoted the trial court, which actually stated:
 "Having considered the factors set forth in Section 3105.171(F) of the Revised Code, the Court finds that the foregoing distribution of the marital assets is of relatively equal value, and constitutes an equitable distribution of the marital assets. Specifically, the Court has considered the fact that the parties have been married since 1971; that a portion's [sic] of the Plaintiff's assets are subject to capital gains taxation; and that the Defendant's share of the marital assets have far greater liquidity than those being awarded to the Plaintiff. See Focke v. Focke, 83 Ohio App.3d 552 (Ct.App. Montgomery Co., 1992). Indeed, almost eighty-five percent (85%) of the Plaintiff's share is the equity in the former marital residence. There is every indication that the Plaintiff intends to reside in that residence with the minor child. [Footnote four: In the event of a sale, the Plaintiff would most likely incur a real estate sales commission of approximately seven percent (7%), in addition to other closing costs.] With regard to the Defendant's share of the marital estate, with the exception of his business interest, all of the assets being awarded to him are liquid in nature. While the Court appreciates that the Defendant could be responsible for penalty and/or income tax in the event he in fact liquidated some of those assets, that is speculative at this time, and in any event, lies solely within the Defendant's control."
As evidenced by the above, the trial court did not state that the sale of the marital residence was subject to capital gains tax. Rather, the fact that appellee received certain stock and securities in the division of the marital property could account for this statement. Moreover, we find that the trial court carefully considered the liquidity of the assets being received by each party and the tax consequences and costs that may be incurred should the assets be liquidated, as required by R.C.3105.171(F).
Based upon a totality of the circumstances, we find that the trial court did not abuse its discretion in its division of marital property. Accordingly, appellant's fourth assignment of error is found not well-taken.
In his fifth assignment of error, appellant argues that the trial court abused its discretion by requiring appellant to pay appellee's attorney fees. Specifically, appellant argues that in order to award a portion of appellee's attorney fees, the trial court was required, pursuant to R.C. 3105.18(H), to make a finding that, if attorney fees were not awarded, appellee would have been prevented from fully litigating her rights and adequately protecting her interests. Because the trial court found that appellee had "available a financial pool from which attorney's fees could be paid," appellant argues that the trial court abused its discretion in awarding attorney fees. Additionally, appellant argues that the $15,711 charged by appellee's attorney was not "reasonable" given the fact that the parties "agreed on most of the issues that normally would consume the majority of a domestic relations attorney's time, such as, custody and valuations of marital assets," that no depositions were taken, no experts were hired, save for a real estate appraiser, and that no testimony, aside from the trial, was taken in court.
With respect to the award of attorney fees, this court has previously held:
 "`The award of attorney fees in a divorce proceeding is a matter committed to the sound discretion of the trial court and, therefore, will not be disturbed on appeal absent an abuse of that discretion. Birath v. Birath (1988), 53 Ohio App.3d 31, 39, 558 N.E.2d 63, 71-72. When attorney fees are awarded in divorce proceedings, they are awarded as part of alimony. Consequently, the court must contemplate those same factors contained in R.C. 3105.18(B) that it considers when it makes an alimony award. The overriding consideration, however, is the financial ability of the party, against whom the award is made to pay. Swanson v. Swanson (1976), 48 Ohio App.2d 85, 95, * * * 355 N.E.2d 894, 901, citing Rivers v. Rivers (1968), 14 Ohio App.2d 120, * * * 237 N.E.2d 164.'"
Williams v. Williams (1996), 116 Ohio App.3d 320, 328, citing,Colello v. Colello (Aug. 9, 1996), 1996 Ohio App. LEXIS 3331, Lucas App. No. L-95-322, unreported. R.C. 3105.18(B) states, in part:
 "* * * An award of spousal support may be allowed in real or personal property, or both, or by decreeing a sum of money, payable either in gross or by installments, from future income or otherwise, as the court considers equitable. * * *"
R.C. 3105.18(H) states:
 "In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, including, but not limited to, any appeal, any proceeding arising from a motion to modify a prior order or decree, and any proceeding to enforce a prior order or decree, if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees."
A trial court may, under some circumstances, rely on its own knowledge and experience in reviewing a record to determine the necessity for and reasonableness of attorney fees. Gearig v.Gearig (Mar. 31, 1993), Lucas App. No. L-92-150, unreported, citing, Goode v. Goode (1991), 70 Ohio App.3d 125, 134, andSladoje v. Sladoje (Feb. 20, 1990), Franklin App. No. 89AP-786, unreported. In such instances, the party requesting attorney fees is not obligated to offer testimony on these matters. Id.
However, at a minimum, the party requesting attorney fees should introduce evidence concerning the nature of the services provided, the time spent by counsel, and the rate charged. Kell v. Kell
(Dec. 14, 1993), Ross App. No. 92CA1931, unreported, citingKnowles v. Knowles (Dec. 18, 1992), Lucas App. No. L-92-033, unreported, and Estep v. Estep (Aug. 8, 1990), Ross App. No. 1586, unreported.
In its decision, the trial court held, "As a general rule, attorney's fees will not be awarded where there is an available `financial pool' from which fees could be drawn." However, the trial court found an exception to this general rule where "the other party's obstructive behavior, or otherwise, necessitates incurring more fees than are reasonable, or when other equitable considerations dictate otherwise."
The trial court held that appellee had a "financial pool" available to her to pay for her attorney's fees; however, the trial court held that these were appellee's only liquid assets and that an award of attorney's fees as spousal support was equitable under the circumstances:
 "The Court further finds that the Plaintiff does have available a financial pool from which attorney's fees could be paid, i.e., the Olde account. However, because those funds constitute the Plaintiff's only source of liquid assets, and because of the Defendant's obstructionist and vulgar behavior in this case, (see Plaintiff's Exhibits J and N),[2] the Court finds that equity and fairness dictate that the Defendant should be responsible for a portion of the Plaintiff's attorney's fees. In this regard, the Court finds that additional attorney time was expended on this case which is directly attributable to the Defendant's negative conduct, including but not limited to the continuance of at least one (1) motion hearing because of his failure to appear. Furthermore, the Defendant's conduct, specifically his threats made to the Plaintiff required additional consultations with her attorney.
 "Based upon the foregoing, the Court finds that equity and fairness require that the Defendant be responsible for the Plaintiff's attorney's fees in the amount of Five Thousand Dollars ($5,000.00). The Defendant has received credit on this obligation in the distribution of the marital assets. This award of attorney's fees is in the nature of additional spousal support, but is not periodic payment of support; such payment shall not be taxable to the Plaintiff nor deductible by the Defendant."
Although the trial court did not specifically determine whether an award of attorney's fees was necessary to allow appellee to fully litigate or protect her interests, see R.C.3105.18(H), the trial court nevertheless determined that an award of attorney's fees as spousal support was equitable. Such an award is permitted by R.C. 3105.18(B). Additionally, although the trial court noted that appellee had funds available to her, it also found that these funds were appellee's only liquid assets. Moreover, appellee testified that she was disabled due to a back injury and was not employed. Appellant, on the other hand, earned over $100,000 annually. Furthermore, based upon our review of the record, we agree that appellant was obstreperous throughout the proceedings.
With respect to the necessity of the services rendered and the reasonableness of the fees charged, appellee submitted a detailed report that described the services provided by appellee's counsel on her behalf, the time spent for such services, and the hourly rate charged. The trial court held that some of these charges concerned a domestic violence case which appellee filed against appellant in Maumee Municipal Court and, therefore, excluded same from appellee's request for attorney fees. With respect to the hours that related directly to the parties' domestic relations case, the trial court found the services to be necessary and the amount of attorney's fees to be reasonable.
Based upon the evidence provided by appellee, appellant's behavior, and the trial court's own knowledge and experience, we find that there was sufficient evidence upon which the trial court could rely to render its decision. As such, we find that the trial court did not abuse its discretion in finding the services necessary and the charges reasonable. Accordingly, we find that the trial court did not abuse its discretion in awarding appellee partial attorney's fees. As such, appellant's fifth assignment of error is found not well-taken.
In his sixth assignment of error, appellant argues that the trial court abused its discretion by refusing to modify the portion of its temporary order pertaining to the payment of monthly expenses. We disagree.
Appellant filed, on June 27, 1997, a motion for modification of the temporary order. In its decision, the trial court awarded a modification of the temporary order; however, only as to the amount of child support and spousal support appellant was to pay each month. Appellant's obligation to pay other household expenses, such as mortgages, school tuition, auto insurance, orthodontia expenses, and credit card payments, remained intact.
The record shows that appellant's income decreased from approximately $135,000 at the time of the temporary order to approximately $120,000 at the time of the trial. Appellee, on the other hand, had $20,560 income, before receiving spousal and child support payments, at the time of the temporary order, which increased to $21,528 at the time of the trial.
We are not persuaded by appellant's argument that he should have been required to pay less merely because appellee was able to pay, during the pendency of the divorce, her attorney fees, Colin's school tuition, and the second mortgage on the house. Despite her apparent ability to pay, appellee testified that she had to sell stock to pay these expenses that appellant failed to pay. Insofar as appellee was unable to pay these expenses from her income, and had to liquidate investments, and because appellant had substantially more income than appellee, we find that there was competent, credible evidence upon which the trial court could have relied in making its decision concerning appellant's financial obligations. Accordingly, we find that the trial court did not abuse its discretion in modifying child and spousal support without modifying appellant's other financial obligations. Appellant's sixth assignment of error is therefore found not well-taken.
On consideration whereof, the court finds substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is affirmed. Appellant is ordered to pay the court costs of this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
James R. Sherck, J.
 Richard W. Knepper, J.
 Mark L. Pietrykowski, J.
CONCUR.
[1] Appellant's 1996 Federal Tax Return is actually labeled Plaintiff's Exhibit D.
[2] Exhibit J is a transcribed telephone conversation between appellant and appellee, wherein appellant made certain threats to appellee. Exhibit N is appellant's response to appellee's counsel's request for production of documents, which stated, "Fuck you Asshole * * * NFW [abbreviation for `No Fucking Way']!"