DECISION AND JUDGMENT ENTRY
This appeal comes to us from a judgment of divorce issued by the Wood County Court of Common Pleas, Domestic Relations Division, involving a division of property and awards of spousal support and attorney fees. Because we conclude that the trial court did not abuse its discretion, we affirm.
Appellant, Joanne M. Dickinson, and appellee, Lawrence C. Dickinson, were married in 1981; no children were born of the marriage. In February 1997, appellant moved out of the marital residence. In April 1998, appellant filed for divorce. A magistrate, in three separate hearings, made the following factual findings.
Appellant, at the time of the hearings, was forty-two years old and employed at the Medical College of Ohio ("MCO") as a nurse practitioner and organ transplant coordinator. She earned $58,600 per year in salary with an additional yearly bonus of $10,000 from a doctors' group at MCO. Her employment with MCO provides for pension benefits with the Public Employee Retirement System ("PERS"). Appellant testified that she had been recently treated for a uterine tumor and takes medications. Her treatments apparently do not substantially interfere with her ability to work.
Appellee, aged sixty-three at the time of the hearings, is unemployed. As a result of a back injury and subsequent surgery in 1981, appellee had become disabled. He received Social Security disability payments for several years which stopped when he became qualified for disability benefits from his pre-marital employment as a railroad clerk. In addition to his back disability, appellee is in poor health, requiring catheterization four times per month and the taking of various medications.
Appellee's gross monthly income from his railroad disability is $845. Appellee has no medical insurance coverage except for that provided through appellant, but will be eligible for Medicare health coverage at age sixty-five. At that time, appellee's disability income will convert to retirement payments. Appellee could earn an additional $400 per month before incurring any loss of his disability/retirement income.
Appellant testified as to the existence of various marital bank accounts. She acknowledged removing approximately $44,000 from her MCO credit union account, but, upon advice of counsel, re-deposited approximately $11,000. She further acknowledged that she had spent a large amount of marital funds when she moved from the parties' residence in early 1997. She stated that, in addition to other expenditures for clothing and household items, she spent $2,500 on a bedroom suite, $3,200 for stereo equipment, and $6,000 in computer equipment.
Initially, appellant could not account for any of the remaining funds that were missing from the MCO account, as well as certain bonus checks and several paychecks issued during the pendency of the divorce. Appellant testified that after she removed the funds from the credit union account, she transferred them to her own accounts and then to other bank accounts.
In a later hearing, appellant stated that she found three uncashed bank checks for $5,000 each which she had forgotten in a drawer. Those funds, as well as some of appellant's bonus checks were held in an attorney escrow fund, pending the conclusion of the divorce proceedings.
As a result of the hearings, the magistrate divided the marital property as follows:
Appellee/Husband Appellant/Wife
 Marital Home $89,000 PERS pension $139,434 Truck 7,540 Car 5,250 UT/MCO Cr.Union 10,507 Boat 16,700 Escrow account 15,748 Life Ins. 2,338 Charter One acct. 6,189 UT/MCO Cr.Union 33,000
Subtotal $128,984 $196,722
Appellant was then ordered to pay appellee a "lump sum of $33,000 to offset the value of property, and equalize the equitable distribution of marital property." This award was to be paid in four installments: $5,000 on or before September 1, 2001; $10,000 on or before September 1, 2002; $10,000 on or before September 1, 2003; and the remaining $8,000 balance is to be paid on or before September 1, 2004.
The magistrate also recommended that appellant reimburse appellee within thirty days the sum of $1,413.11 for various bills and $536.02 for car repairs. Appellant was also ordered to pay spousal support in the amount of $1,300 per month from June 1, 2000 to December 1, 2001; and $666 per month from January 1, 2002 until December 1, 2005. The court retained jurisdiction to modify the amount and terms of spousal support, which would cease upon appellee's remarriage, co-habitation or either party's death. Appellant was also to pay $15,000 to appellee for attorney fees.
Appellant filed objections to the magistrate's decision. The trial court reviewed the decision, considered the effects of any Social Security benefits of either party, and declined to offset appellant's PERS pension by such payments. The court also determined that a lump sum distribution based upon the current value of appellant's pension to offset the value of the marital residence was appropriate due to appellee's age.
The trial court also affirmed the magistrate's finding that appellant had "received and expended $33,972.71 as a distribution of marital funds from a joint checking account that she has been unable to account for." In reviewing the award for car repairs, the court agreed that appellee had not followed the proper procedure in requesting appellant to pay for such repairs. As a result, the court reduced the car repair award by ten per cent, to $482.42. Finally, the court affirmed the magistrate's award of attorney fees, spousal support, and the denial of appellant's motion to reduce temporary spousal support.
The trial court modified the magistrate's decision as follows:
Appellee/Husband Appellant/Wife
 Marital Home $89,000.00 PERS pension $139,434.98 Truck 7,540.00 Car 5,250.00 UT/MCO Cr.Union[1] 26,256.07 Boat 16,700.00 Household goods 3,817.00 Household goods 1,855.00 Charter One acct. 6,189.81 Life Ins. 2,338.00 Jt. Checking 33,972.71
 Total $132,802.88 $199,550.69 Adjust + 33,000.00 -33,000.00
TOTAL $165,802.88 $166,550.69
Appellant now appeals from that judgment, setting forth the following five assignments of error:
 "I. THE TRIAL COURT IMPROPERLY CALCULATED THE NET VALUE OF APPELLANT'S RETIREMENT BENEFITS AND THEREFORE, CREATED AN UNEQUAL DIVISION OF MARITAL ASSETS WHEN THE PENSION BENEFITS WERE OFFSET AGAINST OTHER ASSETS.
 "II. THE TRIAL COURT ERRED WHEN IT AWARDED EACH PARTY DISSIMILAR ASSETS AND CALLED THEM EQUAL.
 "III. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT AWARDED APPELLEE A SUBSTANTIALLY LARGER PORTION OF THE MARITAL ASSETS.
 "IV. THE AWARD OF ATTORNEY FEES TO THE APPELLEE WAS EXCESSIVE, INAPPROPRIATE AND AN ABUSE OF DISCRETION.
 "V. THE AWARD OF SPOUSAL SUPPORT TO THE APPELLEE WAS AN ABUSE OF DISCRETION."
 I.
Appellant, in her first assignment of error, contends that the trial court erred in failing to offset her pension value by social security benefits.
Retirement benefits and pensions, vested during the course of the marriage, are marital assets to be considered in dividing marital property. R.C. 3105.171(A)(3)(a)(ii); Holcomb v. Holcomb (1989),44 Ohio St.3d 128, 132. A state court has no authority to divide interests in Social Security benefits, which are controlled by federal law. See Section 407(a), Title 42, U.S. Code (1982 Ed., Supp. III). Nonetheless, Social Security benefits should be considered when allocating marital retirement benefits. Eickelberger v. Eickelberger
(1994), 93 Ohio App.3d 221, 227; Smith v. Smith (1993),91 Ohio App.3d 248, 255; Streeter v. Streeter (July 30, 1991), Franklin App. No. 91AP-14, unreported.
In determining the equitable division of pension benefits
 "the trial court must apply its discretion based upon the circumstances of the case, the status of the parties, the nature, terms and conditions of the pension or retirement plan, and the reasonableness of the result; the trial court should attempt to preserve the pension or retirement asset in order that each party can procure the most benefit, and should attempt to disentangle the parties' economic partnership so as to create a conclusion and finality to their marriage." Hoyt v. Hoyt (1990), 53 Ohio St.3d 177, 179.
Although a particular pension or retirement fund may not necessarily be subject to direct division by a Qualified Domestic Relations Order, it is still subject to evaluation and consideration in equitably distributing both parties' marital assets. Id. at 180.
In this case, appellant's pension, valued at $139,434, was earned entirely during the marriage. Appellee is receiving railroad disability payments which will become retirement benefits when he reaches retirement age. Appellee earned these benefits, however, when he worked for the railroad prior to the marriage. Therefore, appellee's railroad retirement benefits are non-marital and may not be used to offset appellant's pension.
Appellant argues that the trial court should have offset the value of her PERS account by the evidence presented as to Social Security benefits hypothetically attributable to appellant. However, as pointed out by the trial court, no evidence was presented to show that appellant may not eventually receive some Social Security benefits as a result of her employment outside the public sector. Additionally, appellee is unlikely to realize any Social Security benefits of his own, as such payments would reduce his retirement income. Since the trial court clearly considered the effects of any future Social Security benefits of the parties when determining the value of the pension, we cannot say that the trial court abused its discretion in declining to offset the present value by any Social Security benefits.
Accordingly, appellant's first assignment of error is not well-taken.
 II.
Appellant, in her second assignment of error, argues that the trial court erred in offsetting the value of her pension against the equity in the marital residence.
When making a property award in a divorce action, a trial court has broad discretion. Berish v. Berish (1982), 69 Ohio St.2d 318, 319. Absent an abuse of that discretion, an appellate court will not reverse such a determination. Martin v. Martin (1985), 18 Ohio St.3d 292,294-295. When reviewing such discretion, an appellate court must ascertain whether the disposition, as a whole, was an abuse of discretion. Briganti v. Briganti (1984), 9 Ohio St.3d 220, 222.
In the present case, appellant claims that it is unfair to award appellee a portion of an asset, her PERS account, which she herself cannot begin receiving until twenty years in the future. Appellant suggests that the trial court should have reserved jurisdiction to divide the PERS account when she begins receiving retirement payments from that account. The fact that appellee is twenty years older than appellant illustrates the unrealistic and unfair nature of such a long delay. Appellee, already on disability with various health problems, would be in his eighties by the time he would realize any benefit from the PERS account. The trial court clearly took this into consideration when it chose to offset the entire current value of appellant's PERS account, rather than postpone appellee's receipt of any benefits from such account to a date twenty years in the future. Moreover, appellant's claim that she received presently unusable assets while appellee was awarded the cash assets is negated by her own actions. Appellant was awarded $33,972 attributable to cash assets. Simply because she had already spent that distribution during the pendency of the divorce proceedings does not make her entitled to more cash assets.
Therefore, we cannot say that the trial court abused its discretion in choosing to offset appellant's pension account against the equity in the marital residence.
Accordingly, appellant's second assignment of error is not well-taken.
 III.
Appellant, in her third assignment of error, claims that the trial court unfairly awarded appellee a substantially larger portion of the marital assets. Appellant further contends that the trial court erred in finding that she had misused marital funds.
Generally, marital property is to be divided on an equitable basis.Cherry v. Cherry (1981), 66 Ohio St.2d 348, 355. A trial court's division of marital property will not be reversed absent an abuse of discretion.Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 130; Martin v. Martin
(1985), 18 Ohio St.3d 292, 294-295. An abuse of discretion "connotes more than a mere error of law; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. The court's division shows that appellant actually received $750 more than appellee in the court's award. The only question is whether the court properly awarded appellee funds as a result of appellant's alleged financial misconduct.
R.C. 3105.171(E)(3) provides in pertinent part as follows:
 "(3) If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property."
The financial misconduct statute applies when a spouse has engaged in some type of wrongdoing. Hammond v. Brown (Sept. 14, 1995), Cuyahoga App. No. 67268, unreported. "Typically, the offending spouse will either profit from the misconduct or intentionally defeat the other spouse's distribution of marital assets." Id. Marital property includes various types of property acquired "during the marriage." R.C. 3105.171(A)(3). "During the marriage" is defined as follows:
 "(a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation * * *." R.C. 3105.17(A)(2)(a)
The time frame in which the alleged misconduct occurs may often demonstrate wrongful scienter, i.e., use of marital assets or funds during the pendency of or immediately prior to filing for divorce. SeeBabka v. Babka, (1992), 83 Ohio App.3d 428 (account liquidated "just prior to the parties' divorce"); Gray v. Gray (Dec. 8, 1994), Cuyahoga App. No. 66565, unreported (transferring or withdrawing funds during separation period in order to secret them from the other spouse);Spychalski v. Spychalski (1992), 80 Ohio App.3d 10 (dissipation of wrongful death settlement obtained while parties divorce complaint was pending).
In this case, appellant acknowledged removing, at the very least, approximately $44,000 in marital funds from the MCO credit union account after she left the marital residence. The record reveals that appellant then shifted and transferred these funds between several accounts. Some of the withdrawals were issued as cashiers checks, which appellant initially said she did not have, but later "found." Appellant returned approximately $11,000 to one of the accounts after consulting with her attorney.
Our thorough review of the record reveals that appellant was often evasive and confusing in responding to questions regarding the use or location of the MCO funds. In our view, appellant did not offer sufficient evidence of marital related expenditures to trace the missing $33,000 from the credit union fund. On the contrary, appellant's own records and testimony show that, during the pendency of the separation and divorce proceedings, she spent large amounts of money on furniture, clothing, "gifts," computer equipment, and other non-essential items, while claiming that she did not have money to pay utility, medical, and other bills. She also claimed initially not to have received several $2,500 bonus checks, when, in fact, she had received and cashed most of those checks. Although appellant eventually paid most of the expenses pursuant to the temporary orders, this does not excuse her misuse of other available marital funds.
Based upon our review of the record, we cannot say that the trial court erred in finding that appellant failed to account for approximately $33,000 or in crediting appellant with that amount of marital assets.
Accordingly, appellant's third assignment of error is not well-taken.
 IV.
Appellant, in her fourth assignment of error, argues that the award of attorney fees was excessive and an abuse of the court's discretion.
R.C. 3105.18(H) permits a trial court to award reasonable attorney fees in divorce proceedings if the court:
 "determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating his rights and adequately protecting his interests if it does not award reasonable attorney's fees."
A decision to award attorney fees lies within the discretion of the trial court. Rand v. Rand (1985), 18 Ohio St.3d 356, 359; Parzynski v.Parzynski (1992), 85 Ohio App.3d 423, 439.
In this case, due to appellee's disability, appellant was the principal wage earner during the marriage. The trial court specifically found that appellant has the ability to pay and appellee would have been prevented from fully litigating his rights and protecting his interests. We decline to disturb this finding and conclude that the trial court did not abuse its discretion in ordering appellant to pay $15,000 for appellee's attorney fees.
Accordingly, appellant's fourth assignment of error is not well-taken.
 V.
Appellant, in her fifth assignment of error, contends that the trial court erred in its award of spousal support to appellee.
A trial court has broad discretion in determining spousal support.Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 67; Cherry v. Cherry (1981),66 Ohio St.2d 348, 355. Absent an abuse of that discretion, a reviewing court may not substitute its judgment for that of the trial court.Kunkle, supra; Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 131. As we previously noted, an abuse of discretion is more than a mere error of law; "it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore, supra.
The primary purpose of spousal support is to provide for the financial needs of the ex-spouse. R.C. 3105.18(A); Moell v. Moell (1994),98 Ohio App.3d 748, 751. To determine the necessity for and amount of spousal support, the trial court must consider the fourteen factors provided in R.C. 3105.18(C)(1), including, but not limited to: 1) the income sources and relative earning abilities of the parties, 2) the ages and physical, mental, and emotional conditions of the parties, 3) the retirement benefits of the parties, 4) the duration of the marriage, 5) the standard of living of the parties established during the marriage, 6) the relative education of the parties, 7) the relative assets and debts of the parties, including but not limited to any court-ordered payments by the parties, 8) contributions of each party to the education or earning ability of the other party, 9) the tax consequences for each party of an award of spousal support, or 10) any other factor that the court expressly finds to be relevant and equitable. Id.
In this case, appellant was educated and trained during the eighteen year marriage for the skills she uses in her current position. Appellant earns approximately $68,000 per year compared to appellee's $10,140 per year from disability income. Appellant's income will likely increase faster and at a higher rate than appellee's which is fixed, except for possible cost of living increases. Appellee's age, health, and disability prevent him from participating in any rehabilitation program to improve or add employment skills. Upon a complete review of the record, we cannot say that the trial court erred in its award of spousal support.
Accordingly, appellant's fifth assignment of error is not well-taken.
The judgment of the Wood County Court of Common Pleas, Domestic Relations Division, is affirmed. Court cost of this appeal are assessed to appellant.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J., James R. Sherck, J., and Richard W. Knepper,J., CONCUR.
[1] Apparently, the court combined the credit union account and the escrow account to arrive at this total.